KELLY HANDLE COMPANY v. SHANKS.

Opinion delivered November 22, 1920.

1. MASTER AND SERVANT—DEGREE OF CARE.—It is the duty of a master to use ordinary care to furnish suitable appliances for the work which it requires its servants to perform.

2. MASTER AND SERVANT — ASSUMED RISK — QUESTION FOR JURY.— Where a mill worker who had been accustomed to operating a ripsaw, but had never operated a cut-off saw, and was injured by a cut-off saw bucking, the question whether he assumed the risk of operating a cut-off saw was for the jury, though there was testimony that the danger was obvious.

3. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—INSTRUCTION. —In an action for injuries to a servant, an instruction which in plain terms predicated plaintiff's right to recover on his having exercised due care for his own safety is not objectionable as ignoring the defense of contributory negligence.

4. MASTER AND SERVANT—ASSUMED RISK—INSTRUCTIONS.—Instructions that a servant does not assume any risk arising out of the failure of the master to use ordinary care to provide a reasonably safe place, and that if the servant knew of the unsafe condition of the machinery or place where he was employed, and made no complaint, he assumed the risk therefrom, held erroneous in ignoring the principle that the servant assumes patent risks to the same extent as if known by him.

5. APPEAL AND ERROR—PREJUDICIAL ERROR.—Where instructions were erroneous as ignoring issues in the case, and were in conflict with other instructions, the error calls for reversal, since the court can not know that the jury did not follow the erroneous instructions.

6. TRIAL—INSTRUCTIONS.—It was not error to refuse instructions which were either argumentative in form or were covered by other instructions given by the court.

Appeal from Mississippi Circuit Court, Chickasawba District; *R. H. Dudley*, Judge; reversed.

### STATEMENT OF FACTS.

Ben Shanks sued the Kelly Handle Company to recover damages for injuries received by him while operating a rip-saw in the handle mill of the company. The evidence adduced by the plaintiff is, substantially, as follows:

The Kelly Handle Company owned and operated a handle mill in the city of Blytheville, Arkansas, and Ben Shanks had been working for it about fifteen months when he was injured. Previous to the day he was injured, Shanks had been operating a block-saw. Timber was brought into the mill in the form of blocks, and it was his duty to take the blocks and shape them into handles to go into lathes. In doing this work, he generally sawed the wood with the grain. Shanks had run lathes and saws before working for the handle company, but he had never operated a cut-off saw until the morning of his injury. The foreman of the mill was his stepfather, and on the morning of the injury he directed Shanks to operate the rip-saw as a cut-off saw. Shanks went to work at the machine about nine o'clock in the morning and continued to operate it until noon. He discovered that there was something wrong with the machine, but he did not know what it was. At noon he took the saw off and filed it, thinking that would make it work better. During the afternoon the saw kept bucking and jumping, but Shanks kept on working, thinking it would get better after a little while. About three o'clock he put a piece of timber into the saw for the purpose of sawing it into wedge blocks. When the timber was placed against the saw, it caused the saw to pinch and buck at the same time. This caused the block to be kicked up. Shanks got hurt because the saw pinched the timber and made it kick back, and this caused Shanks' hand to slip into the saw, and injured it so badly that it had to be cut off. Shanks was twenty-eight years old at the

time, and had worked in various positions in a handle factory since he was twelve years of age. The piece of timber which injured him was green hickory, and the bark was not off of it entirely, and it was slick. This is substantially the testimony of Shanks himself.

It was shown by other witnesses that a cut-off saw is used to cut timber across the grain, and that a rip-saw is used for the purpose of sawing it lengthwise, or cutting with the grain of the timber. In undertaking to use a rip-saw to cut across the grain, there is danger of the saw bucking and letting the operator's hand go into the saw. The reason the saw bucks is because it does not clear its way.

One of the witnesses testified that, during his thirty years' experience in the mill business, he had never before seen a rip-saw used for a cut-off saw. A cut-off saw has a diamond point tooth, and a rip-saw has a hook tooth. It requires less force to push timber to a hook tooth saw than it does with a diamond saw. Pushing too hard on a hook tooth saw makes it pinch. The saw which injured Shanks was attached to a table or frame which was old and shaky and too light for the work it was doing. One end of the table was higher than the other and the table was shaky. The mandrel was fastened into the table upon which the saw was run. The saw was on one end of the mandrel, and the balance wheel was on the other end for a pulley for it to run on. The boxing was loose, and this had a tendency to cause the saw to continually buck and kick the timber back out of it and this would make the saw pinch. It took a good deal of power to press the timber through the saw, and if it had been a cut-off saw it would have fed much easier. The fact that the table was too light and shaky and out of plumb also caused the saw to pinch.

Evidence was adduced by the defendant tending to show no negligence on its part and contributory negligence and assumption of risk on the part of the plaintiff. Other facts will be stated or referred to in the opinion.

The jury returned a verdict for the plaintiff, and

from the judgment rendered the defendant has appealed.

*Buck & Lasley,* for appellant.

1. It was error to refuse to instruct a verdict for defendant. Every defect in the machinery was patent and defendant assumed the risk clearly. 58 Ark. 130; 82 *Id.* 534; 135 *Id.* 563; 105 *Id.* 437. See, also, 129 *Id.* 96; 123 *Id.* 119; 55 N. E. 724; 56 *Id.* 574. It is clear that appellee assumed the risk as a matter of law. 107 Ark. 534; 82 *Id.* 534; 99 *Id.* 377.

2. The court erred in refusing instructions requested by appellant. 104 Ark. 509; 101 *Id.* 542; 63 *Id.* 177; 56 *Id.* 387; 107 *Id.* 476; 87 *Id.* 324; 96 *Id.* 504; 97 *Id.* 472; 79 *Id.* 81.

3. Appellant's instruction No. 10 should have been given. 90 Ark. 411; 95 *Id.* 560; 100 *Id.* 465; 92 *Id.* 102.

4. No. 11 asked by appellant should have been given and it was error to give the one on the court's own motion as No. 3. It was in conflict with others given. 99 Ark. 385; 83 *Id.* 61; 76 *Id.* 225. And there was no evidence upon which to base them. The failure to instruct appellee was not the proximate cause of the injury. 93 Ark. 153; 107 *Id.* 341. The instructions are conflicting and not harmonious. 83 Ark. 61; 76 *Id.* 226; 74 *Id.* 585.

5. The verdict is excessive and the result of prejudice or passion.

*W. W. Farabough, W. M. Hall* and *Chas. L. Neelly,* of counsel, for appellant.

*Davis, Costen & Harrison,* for appellee.

1. A verdict for defendant was properly refused to be instructed. The machine was dangerous, but the danger was not patent, and appellee did not assume the risk. The warning was not sufficient. 115 Ark. 380. Every question presented here has recently been decided by this court against the appellant's contentions. 128 Ark. 586.

2. There is no error in the instructions given, and those refused were covered by those given. The court

properly told the jury what risks were not assumed by appellee. 124 Ark. 588; 128 *Id.* 586. The court's instructions properly declared the law. 81 Ark. 247; 90 *Id.* 476; 128 *Id.* 591; 125 *Id.* 588.

3. The verdict is not excessive. 101 Ark. 376. It is reasonable.

Hart, J. (after stating the facts). It is earnestly insisted by counsel for the defendant that the plaintiff knew all about the defects in the machine and that he assumed the risk.

The evidence on the part of the plaintiff tended to show that the table was too light and shaky, and that one end was higher than the other. The witnesses said that this had a tendency to cause the saw to pinch and throw back the wood which was being sawed. There was also a defect in the mandrel which caused the saw to pinch.

Another witness said that he had never seen a rip-saw used for a cut-off saw before. The use of a rip-saw in the place of a cut-off saw had a tendency to make the saw pinch because the teeth in the two kinds of saws were different. A rip-saw is used generally to cut wood with the grain and a cut-off saw is used generally to cut it against the grain.

It was the duty of the defendant to use ordinary care to furnish suitable appliances for the work which it required its servants to perform. *Wilcox* v. *Hebert,* 90 Ark. 145; *St. L. S. W. Ry. Co.* v. *Lewis,* 91 Ark. 343; *Headrick* v. *H. D. Williams Cooperage Co.,* 97 Ark. 553, *Pekin Stave & Mfg. Co.* v. *Ramey,* 104 Ark. 1.

The evidence was sufficient to warrant the jury in finding that the defendant was negligent in this respect, but it is earnestly insisted by counsel for the defendant that the plaintiff, as a matter of law assumed the risk. They point to the fact that the plaintiff was twenty-eight years of age at the time he was injured, and that he had worked in a handle factory in various capacities since he was twelve years of age. He was accustomed to operating a rip-saw and to filing and setting it.

Other witnesses testified that the defective condition of the table and the mandrel was apparent to any one with any experience in operating saws of any kind. Hence they urged that the danger was obvious and patent to the plaintiff, and that he assumed the risk by continuing at work operating the saw.

We do not think that it can be said as a matter of law that the plaintiff assumed the risk. He testified that he knew that the saw pinched and bucked, but that he did not know what caused this. He first thought that it was caused by the saw being too dull. He filed and set the saw at the noon hour in order to remedy this. He had never operated a rip-saw as a cut-off saw before. While he had been accustomed to a rip-saw, it can not be said, as a matter of law, that he knew and appreciated the danger of using a rip-saw for a cut-off saw on the occasion in question.

One witness testified that in all his thirty years' experience in a handle mill he had never seen a rip-saw used before to do the work of a cut-off saw. It was shown that it required more force to operate a rip-saw to cut timber against the grain than it did to operate a cut-off saw. It was also shown that, on account of having different shaped teeth, a rip-saw was likely to pinch when used as a cut-off saw. The fact that the plaintiff tried to remedy the defect in the saw by filing it shows that he did not know what caused the saw to buck and pinch. He had never operated a rip-saw as a cut-off saw, and we think under the circumstances the question of assumed risk was one for the jury. His stepfather had told him to use the saw in question, and the fact that he continued to operate it for two hours after noon could not operate to take the case from the jury. He had attempted to remedy the defect in the saw at noon and failed to do so. It is true it kept pinching and bucking after he went to work with it in the afternoon, but it can not be said that, because he kept on at work for nearly two hours, he, as a matter of law, assumed the risk.

Therefore, the court did not err in submitting the case to the jury.

It is insisted that the court erred in giving instruction No. 3. The error complained of is that the instruction ignored the defense of contributory negligence. We do not deem it necessary to set out the instruction. In plain terms, the instruction predicates the plaintiff's right of recovery upon his having exercised due care for his own safety. If he exercised due care for his own safety, he was not guilty of contributory negligence.

It is also contended that the court erred in giving instructions Nos. 14 and 15, which are as follows:

"14. The servant does not assume any risk arising out of the failure of the master to use ordinary care to provide a reasonably safe place and reasonably safe instruments and appliances with which to work, but only such as are normally and necessarily connected with the employment."

"15. Where a servant knew of the unsafe condition of the machinery with which, and the place where, he was employed to work and made no complaint or request that such condition be remedied, he will be held to have assumed all of the risks of the injury from the operation of said machinery and the place where he was employed, and in this case if you find from the evidence that the plaintiff knew of the unsafe or improper machinery and that he made no complaint concerning the same, your verdict should be for the defendant."

It is urged by counsel for the defendant that instruction No. 14 is erroneous because the servant does not assume the hazards and risks arising out of the failure of the master to furnish a reasonably safe place and reasonably safe appliances with which to work where the servant himself knows the risk and appreciates the danger, or where the risk is patent and obvious.

It is insisted that the defects of the instruction in this respect are cured by instruction No. 15, which immediately follows instruction No. 14. This contention is made in the application of the rule laid down in *St.*

*Louis, Iron Mountain & Southern Railway Company* v. *Rogers,* 93 Ark. 564, to the effect that where two instructions follow each other and from the language used, or the relation which the instructions bear to each other, it is apparent that they are to be read together and can be read together so as to harmonize with each other, it is our duty to so treat them.

In the application of this rule it is claimed by counsel for the plaintiff that instruction No. 15 cures the defect in No. 14, and that the two instructions should be read in connection with each other, and when so done each supplements and harmonizes the other.

The trouble about this contention is that instruction No. 15 is not itself correct. Instruction No. 15 told the jury in conclusion that, if it should find from the evidence that the plaintiff knew of the unsafe or improper machinery and made no complaint concerning the same, its verdict should be for the defendant. The instruction did not go far enough. An employee is required to notice patent defects in the machinery about which he is employed and is bound to assume the risks thereof to the same extent as if their existence had been within his actual knowledge. *Jones* v. *Malvern Lumber Co.,* 58 Ark. 125, and *Fullerton* v. *Henry Wrape Co.,* 105 Ark. 434.

There was testimony in the present case that the defects in the machine were so obvious as to be apparent to a person of ordinary intelligence, and in such cases the law charges the servant with the knowledge of the danger. The submission of this issue was ignored in both instructions Nos. 14 and 15. The principal contention of the defendant was that the defects in the machine were so obvious that the plaintiff could not have helped seeing them and realizing the danger of continuing at work with the machine without it being repaired. The instructions ignored this issue, and were therefore at variance with the other instructions in the case. The court can not know but that the jury followed these erroneous instructions, and on that account found in favor of the plaintiff.

It follows that the giving of these two instructions constituted prejudicial error, calling for a reversal of the judgment.

Again, it is insisted by counsel for the defendant that the court erred in refusing certain instructions asked by it. We do not deem it necessary to copy these instructions in the opinion and discuss them in detail. Some of them, for instance, were in regard to the burden of proof. The court in its instructions to the jury placed the burden of proof upon the plaintiff, and it was not required to repeat instructions on this point at the request of the defendant. Besides, the instructions for the defendant on this point are argumentative in form, and for that reason should not have been given. So, too, in regard to the instructions asked by the defendant on the question of assumption of risk. Its instructions on this point were either argumentative in form or were covered by the instructions given by the court. It did not constitute error for the court to refuse to repeat instructions on the same point.

For the error in giving instructions Nos. 14 and 15 by the court, the judgment must be reversed and the cause remanded for a new trial.