LUTEN BRIDGE COMPANY *v.* COOK.

Opinion delivered November 3, 1930.

*Andrew I. Roland* and *Thos. W. Roland,* for appellant.

*John L. McClellan,* for appellee.

SMITH, J. Appellant company, a corporation, had a contract with the State Highway Commission for the construction of a bridge across Ouachita River, the girders of which were constructed of reinforced concrete. In the construction of the girders heavy forms were used to support them until the cement had set, after which the forms were removed. The forms were built of heavy pieces of lumber and weighed from 150 to 250 pounds each. The testimony is conflicting as to the number of men usually employed in removing the forms, but the testimony supports the finding made by the jury on this issue of fact that the usual number was from four to eight men.

The testimony clearly establishes the fact that the men were in positions imposing strains upon them while employed in removing the forms, as they were working under the floor of the bridge and about fourteen or eighteen feet above the ground, and they had only the cap sills on which to stand or sit while they were so employed.

There was no scaffolding upon which they could stand and work.

On October 24, 1929, appellee, who is a carpenter by trade and thirty years of age, was sent by his foreman to assist two other employees in removing one of these forms. He had not previously performed work of that kind, and was given no instructions as to the manner of removing the forms, except that they were not to be wrecked but were to be taken out whole, so that they might again be used for the same purpose. Appellee and his fellow-servants were furnished wrecking bars, to be used in removing the forms. These bars were of different length and thickness. The one selected by appellee was about three feet long, one inch thick, and made of steel.

In order that the form might be held properly in place, it was nailed with 20-penny nails to another form called the "girder form," and it was the theory of the defendant company that appellee's injury was caused by attempting to remove the form before he withdrew the nails, but this question of fact was submitted to the jury under an instruction to the effect that there could be no recovery if this had been the cause of the injury. The verdict of the jury finding for appellee concludes this question of fact.

The testimony on behalf of the appellee was to the effect that all of the nails had been removed which the work required, and that the trouble was that the form was wedged in between the concrete, and appellee and his fellow-servants had pulled the form down until they had no leverage for their bars. When this condition arose, the men used their hands. The company's foreman testified that the bottoms of the forms came out first, and then the men prized straight down, but there was testimony, as has been stated, that the forms upon which appellee was working when he was injured had been pulled down to a point where there was no longer a fulcrum to afford leverage for pulling down with the bars. Upon this point appellee testified as follows: "We

all prized with our wrecking bars, and we couldn't get it out; so that the other two men were prying, and we got it open enough so I could get my arm in there, and I said, 'Just hold and I believe I can do more with my shoulder than I can with my wrecking bar.' So they used their wrecking bars, and I set one foot against the second girder and one on the cap and gave a surge against it to pull out, but I didn't get the form out at that time, only I hurt myself. Three men couldn't get it out without doing all that straining.''

Appellee was ruptured, and no contention is made that the judgment returned in his favor, from which is this appeal, is excessive.

Liability on the part of the master, the bridge company, is predicated upon the proposition that appellee was directed to perform a service, which was made dangerous by reason of not having been furnished sufficient help, and that the work could have been performed safely, had sufficient help been supplied.

We have stated the testimony in the light most favorable to appellee, as we are required to do in testing its legal sufficiency, but, when thus viewed, it appears to us that appellee must be held, as a matter of law, to have assumed the risk of his injury. He did not act in an emergency. The case is not one where the form was about to fall and be damaged, or injure appellee or one of his fellow-servants unless he attempted to support it. In fact, he sustained his injury in an unsuccessful attempt to remove the form. To use his own expression, he "surged" against the form with a force so great that he ruptured himself. No one could know better than he what force might safely be applied, and the danger of injuring himself if he overtaxed his strength was an obvious one, the risk of which he must be held to have assumed.

Moreover, the undisputed testimony shows that, even after appellee was injured, the same three men continued their efforts to remove the form, and by resorting to first

one expedient and then another they succeeded in doing so without further injury to any one.

Under the facts stated, we think there was no liability in this case, and that a verdict should have been directed for the defendant. It appears, however, that appellee had sustained two separate injuries during the course of his employment, and that he brought separate suits, which were consolidated and tried together, but separate verdicts were returned in his favor in each case, and while the entire record of the trial of both cases is before us, we are asked to reverse the judgment only in the case which we have discussed. This will be done, and, as it appears to have been fully developed, it will be dismissed. The judgment in the other case will be affirmed.