ARKANSAS WESTERN GAS COMPANY *v.* BRAGG.

4-4711

Opinion delivered June 28, 1937.

*Pearson & Pearson,* for appellant.

*George A. Hurst, Kelsy Norman, Henry Warten* and *Alfred K. Lee,* for appellee.

McHANEY, J.   On July 26, 1935, appellee was in the employ of appellant as a welder's helper, the welder being one John Dunson, and they were engaged in welding pipe in a pipe line appellant was laying near Springdale, in Washington county.   Two metal tanks were used by them in their work, one containing oxygen and the other acetylene, and weighing about 230 and 165 pounds respectively.   In the progress of the work, it became necessary to move these tanks, and this was done by loading them on a small truck.   Carl Watson, who appears to have had general charge of the work, directed appellee to load the tanks on the back end of the truck which he placed in position near the tanks, which he did, but in loading the heavier tank as he thereafter claimed, he was severely injured by the strain which caused a left inguinal hernia.   He brought this action

for damages in a large sum on March 20, 1936, and recovered a judgment, after verdict, in the sum of $3,000, from which is this appeal.

At the conclusion of the evidence for appellee and again at the conclusion of all the evidence in the case, appellant requested a directed verdict in its favor, which was refused over objections and exceptions, and this forms the basis for the principal ground of reversal on this appeal. We agree with appellant that the court erred in refusing these requests. There was no evidence of any negligence on the part of appellant and appellee assumed the risk of injury in loading the tanks without additional help, under the facts and circumstances of this case.

Only one ground of negligence relied upon by appellee was submitted to the jury, and that was that appellant failed to furnish him sufficient help in loading said tanks into the truck. The facts, stated most favorably to him are that Watson directed him to load the tanks into the truck which he (Watson) backed down the road to within five or ten feet of the tanks; that the tanks were from 75 to 300 feet from the truck, and that appellee either walked down to the tanks or rode on the back end of the truck; that the larger tank is about 3½ feet long by 18 inches in diameter, and the smaller 2½ feet by 10 inches; that he is 5 feet, 4 inches tall and weighs 130 pounds; that Watson told him to hurry; that the welder suggested to Watson in his hearing that he was not big enough to load them; that Watson replied, ''No, if he can't load them, I will kick his rear for him''; that he walked down to where the tanks were, picked up the larger one, stepped on a piece of 2x4 and slipped, and hurt himself in the groin. He admitted that he did not consider the remark of Watson about kicking him of any consequence nor did he load them under any compulsion because of such remark as he and Watson were good friends. There was some dispute as to when the accident occurred, whether on Friday, the 26th of July, or Saturday, the 27th. In a statement made and signed by him on August 15, he said it was ''on the last Friday in

July, 1935," and that he did not ask Watson to help him because he thought he could do it, having lifted them before. However, the date is immaterial, and is mentioned only to show the frailty of memory. The fact remains that, whether on Friday or Saturday, he attempted to and did load the tanks with his friend, Watson, present, without asking for help, and, actually declining it, according to Watson, and without making any complaint of any injury at the time. It is difficult to discover wherein appellant was negligent. Some suggestion is made that leaving the piece of 2x4 there was negligence. But appellee himself put it there, as he did other short pieces on which the ends of the gas pipe rested, all along the roadway where the pipe was being laid. He knew these pieces were there and they were as open and obvious to him as they were to Watson—a fact which he admits, but says he didn't look. In *Missouri Pac. Railroad Co.* v. *Dickinson,* 193 Ark. 1179, 100 S. W. (2d) 968, we said: "If the bump was there it was as observable to him as it was to the assistant foreman. No duty devolved on the appellants to send an inspector down to examine for bumps in the metal covering. They were as visible to the appellee as they would have been to an inspector. The rule is as stated in (certain cases named) that where the perils of the employment are known to the employer, but not known to the employee, the former is liable for injuries to the latter resulting from such employment, but that no liability is incurred when the latter's knowledge equals or exceeds that of the former. This rule is applicable here."

As to the negligence relied on—insufficient help—we think the recent case of *Luten Bridge Co.* v. *Cook,* 182 Ark. 578, 32 S. W. (2d) 438, is controlling here. We there said: "Liability on the part of the master, the bridge company, was predicated upon the proposition that appellee was directed to perform a service which was made dangerous by reason of not having been furnished sufficient help, and that the work could have been performed safely if sufficient help had been supplied. We have stated the testimony in the light most favor-

able to the appellee as we are required to do in testing its legal sufficiency, but when thus viewed it appears to us that appellee must be held, as a matter of law, to have assumed the risk of his injury. He did not act in an emergency. The case is not one where the form was about to fall and be damaged, or injure the appellee or one of his servants, unless he attempted to support it. To use his own expression, he 'surged' against the form with a force so great that he ruptured himself. No one could know better than he what force could be applied, and the danger of injuring himself if he overtaxed his strength was an obvious one, the risk of which he must be held to have assumed.''

But appellee contends that, because appellant asked and was given certain instructions after the court had refused its request for a directed verdict, it waived its right to insist thereon, and is now estopped from so doing. Appellee falls into error in this argument and has misapplied the rule of inconsistent positions in the cases cited. We have never held that a defendant who asks a directed verdict in his favor, which is refused, is estopped to insist on it on appeal, merely because he thereafter asks, and is given instructions on the issues submitted to the jury. If he cannot prevent the wreck, he ought not to be estopped from salvaging as much of the loss as possible.

The trial court should have directed a verdict for appellant. The judgment will, therefore, be reversed, and the cause dismissed.