*506 The opinion of the Court was afterwards drawn up by
Parker C. J.
The proceedings in this case have had relation to the powers vested in commissioners of highways under St. 1825, c. 171. The inhabitants of Springfield had applied to the commissioners, by petition, to construct and finish a highway which had been laid out through that town by the Court of Sessions before the passing of that act, and to certify the expenses thereof to the Court of Sessions, hi order that the same might be paid out of the county treasury, according to the provisions of that act. On this petition the commissioners refused to proceed as prayed, and the inhabitants, deeming their refusal illegal, petitioned this Court for a mandamus to the commissioners, requiring them to proceed according to the prayer of the inhabitants. At the September term 1826, of this Court, for the county of Hampden, a rule was granted against the commissioners tti appear at the then next term of the Court to be held at Northampton, for the counties of Hampshire, Franklin and Hampden, at which term the commissioners appeared ; and no sufficient cause being shown why a writ of mandamus should not go against them, such a writ was awarded in the alternative, returnable to the next term of the Court in the county of Hampden, when and where the commissioners made their return upon the writ, setting forth divers facts and circumstances justifying them, as they supposed, in refusing to construct and finish the road and certify the expenses according to the original prayer of the inhabitants ; and at the next term of the Court at Northampton, in September, 1827, the inhabitants and the commissioners were partially heard by counsel, on the sufficiency of the return, but the parties wishing to be further heard thereon; the cause was continued nisi by consent, for arguments in writing to be interchanged and presented to the chief justice in the ensuing winter, to be laid before the Court at a meeting of the justices intended to be held at Boston, in the month of January, 1828. These arguments were not completed and presented until after the meeting of the justices was terminated, so that there was no opportunity of considering them until the March term 1828, of the Court, in Boston. Previous to this meeting the act of 1827, c. 77, was passed, constituting the board of county *507 commissioners and repealing the act of 1825, c. 171, which vested all power in relation to highways in the commissioners of highways, as they were denominated in that act. And the question is, whether the “ commissioners of highways” can now lawfully be compelled by mandamus to execute the duty assigned them under the repealed statute ; or in other words, whether any power or authority remains with that body in relation to the subject matter of these proceedings, which power and authority they may be compelled to exercise.
It seems to be a settled principle, that where a special tribu nal is created by act of the legislature, upon the repeal of the act without any saving clause of proceedings commenced and pending before it, its whole power and authority cease, and it cannot proceed to finish what may have been so commenced.
.MZZZer’s Case, 1 W. Bl. 451 [1]. This was a motion for a mandamus to the Justices of Sessions to proceed to grant Miller a discharge under the insolvent debtors’ act of 1 Geo. 3, because the clause of the statute under which the discharge was to be given, was repealed by a subsequent statute; yet the jurisdiction had attached before the repeal, by instituting and proceeding in the suit. But the court held that nothing was more clear, than that the jurisdiction was gone, and that they could not grant a mandamus: and it was observed, that even offences committed against a clause while in force, could not be punished without a special clause to allow it.
And the practice of legislatures is agreeable to this principle , for whenever penal statutes are repealed, it is usual to introduce a proviso for the continuance in force of the statute, in regard to prosecutions commenced before the repeal.
And if this is a sound principle when applied to special jurisdiction over a particular subject, given to courts of general jurisdiction, whose powers in other respects remain unimpaired by the repeal of a particular statute, it must apply with at least equal force where the tribunal itself is created by the very statute which is repealed ; for as all power of a judicial nature emanates from the legislature, if it is taken away from one tribunal and vested in another, no vestige of authority remains in *508 the former, unless by special provision or very clear implica ti on it appears to have been the intention of the legislature that it should be continued.
It is intimated however by the learned counsel for the petitioners, who very candidly cited Miller’s Case, that the principle adopted in it is hardly consistent with the doctrine in Couch v. Jeffries, 4 Burr. 2460; but an examination of this last case has satisfied us that there is no such inconsistency as is supposed. This was not the case of a repealed statute, but of a provision to enable persons subject to a penalty under a former statute, to avoid the penalty by doing a certain act. And the question was, whether, as the action had been tried and a verdict rendered before this exculpatory act was done, it should prevent a judgment on the verdict; and it was held that the right to the penalty had vested under the former statute, and therefore the excusing statute ought to be construed to relate only to future actions, for the words were general and ought to be so construed as to save vested rights. In the former case, of Miller, the jurisdiction and power of the court were taken away by the repealing statute ; in the latter case, the power was left, and the question was merely one of construction.
It is also said by the same counsel, that the case before us is different from Miller’s, because here was a judgment, and in that there was none ; but there has been no judgment in this case, but only interlocutory proceedings, as there had been in that, and we cannot distinguish the two cases in principle.
We have examined very critically the statute of 1827, c. 77, to see if either by express terms or by implication we could discern any intent of the legislature to save any jurisdiction in the commissioners which will warrant us in proceeding to compel them to do what is prayed for by the petitioners, but we find no such intention. In the first section, the statute of 1825, c. 171, is expressly repealed. There is a saving proviso which shows, we think, that there was no carelessness in legislating upon this subject. Under this proviso the authority of the commissioners is continued, where they shall have adjudicated upon any highway, that it is of common convenience and necessity, or shall have supervised and established, altered or discontinued any highway, whether worked or not; and it is *509 .nen provided that the new act shall not impair any contract made by the commissioners, or any liabilities incurred or rights accrued under the same, but the same, and the remedies for enforcing them, shall remain the same as if the act had not passed. Under this branch of the proviso the county commissioners may have authority to supervise this subject, but it is not within the power reserved to the commissioners of highways. Now nothing had been done by these commissioners of highways in relation to the road which is the subject of this complaint. It had been adjudged to be of common convenience by the Court of Sessions, not by them. It had not been supervised, &c. by them, nor had they made any contract respecting it. The very grievance complained of is their refusal to do any of these acts. If the legislature had intended to save from the repealing act, all complaints and processes instituted before the commissioners, touching the execution of powers vested in them by the former statute, they would have made express provision therefor.
Several cases have been cited to show that the Court will, in their discretion, sometimes enter judgment as of a preceding term, to avoid the effect of the death of a party upon the proceedings, where the cause had been continued after a hearing, and after judgment would have been entered, but for the de lay thought necessary by the Court to deliberate upon the case ; and the inference is probably intended to be drawn, that a judgment may in this case be entered nunc pro tune, and a peremptory mandamus awarded thereon. But the cases in which this discretionary power has been exercised were wholly dissimilar to this, and we do not feel authorized to extend the principle further than it has heretofore been applied. In the first place, this case was not delayed for the convenience of the Court at the time when the repealing act passed, but stood continued in the ordinary course of business for argument. This was for the convenience of the parties or their counsel. In the next place, we should, by so doing, give power and jurisdiction, by a fiction, to a tribunal which had by the act of the legislature ceased to exist, and this would be legislative power which we are not authorized to assume. Then again, we should be obliged to go back not merely to the last term *510 preceding the actual entry of judgment, but to a term preceding the enactments of the repealing statute, in order to avoid the effects of it.
The position that every thing done under a statute while in force, remains valid, though the statute may afterwards be repealed, is undoubtedly true, but goes no further than to render valid things actually done ; but when those things themselves are merely preliminary, the principle does not authorize a further proceeding in order to render them effectual. So the continuance of certain legal proceedings in force, and the right to proceed further in them notwithstanding the death of the king, is only a relaxation of the harsh common law principle, that all suits are abated by the death of the king ; a most despotic principle, which will not allow even the law to survive the chief officer of the law, the king.
It is said, however, that there was a vested right in the inhabitants of Springfield by virtue of the provisions of St. 1825, c. 171 ; a right to be reimbursed in or saved from the expense of making a highway, which before the operation of that act had not been worked and finished; and that the legislature could not divest them of that right. But there is no such thing as a vested right to a particular remedy. The legislature may always alter the form of administering right and justice, and may transfer jurisdiction from one tribunal to another. If there is a vested right, it is not invaded by the repeal of the act which created it, for the new statute makes sufficient provision for all cases under the former statute not reserved to the old board, by providing, in the 6th section, that “ wherever any highway is already laid out or altered in any county, which it would be the duty of such county to make, under the provision of law, and the working of the same is not already commenced by said commissioners of highways, or by them contracted to be made, it shall be the duty of said county commissioners to do and perform all the acts in relation to the making of the same which it would be incumbent upon the said commissioners of highways to do and perform if this act had not been passed.”
We give no opinion as to the probable success of an application to the new board, for it must be decided be *511 tween other parties, and perhaps upon a different state of facts.
Under the foregoing considerations we are all .of opinion, that a writ of mandamus to the commissioners of highways, cannot be granted, as prayed for in the petition.[1]

 See S. C. 3 Wilson. 420; Dwarris on Stat. 671.

 See Thayer v. Seavey, 2 Fairfield, 286 to 290; 1 Kent’s Comm. (3d ed.) 465, note a