'ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

v. LEDFORD.

Opinion delivered May 3, 1909.

1. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT—ASSUMED RISK.
—Under the act of March 8, 1907, making railroad companies and
corporations liable to servants for injuries sustained by the negli-
gence of a fellow servant, a servant who is aware of the habitual neg-
ligence of a fellow servant is not deemed to have assumed the risk of
injury therefrom. (Page 545.)

2. SAME—CONTRIBUTORY NEGLIGENCE.—Where a railway employee was
injured while riding on an engine, and sued to recover therefor, it
was not error to refuse to instruct the jury that "if there were two
places on the engine in which plaintiff could have ridden, one safer
than the other, and this fact was known to the plaintiff, or was so
apparent that one of his years, intelligence and experience would
naturally see and appreciate it, and plaintiff in such event selected the
less safe place, and his riding in such place caused or contributed to
his injury, your verdict must be for the defendant;" for it was a
question for the jury whether under all the circumstances plaintiff was
negligent in occupying the place which he did. (Page 547.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,*
Judge; affirmed.

*Lovick P. Miles,* for appellant.

Negligence of the master, whether committed directly or
through a fellow servant, may be assumed. 77 Ark. 367; 79 *Id.*
53; 86 *Id.* 507. Only when the facts are undisputed should the
court declare as a matter of law that the risk was assumed. 79
Ark. 53; 205 U. S. 1. The permit to ride the engine given by
'phone was not sufficient; it should have been in writing. 75
Ark. 579; 81 *Id.* 369. It is error to submit to the jury abstract
issues that find no support in the testimony. 77 Ark. 109; *Id.*
261; 85 *Id.* 532; 79 *Id.* 225. An employee assumes all the risks
connected with the business in which he is employed of which
he has notice, even though they are produced by the negligence
of the master. 51 Am. & Eng. R. Cas., N. S., 365; 205 Ill. 643;
69 N. E. 79.

*Sam R. Chew,* for appellee.

An employer is chargeable with knowledge of whatever it is
his duty to find out and know. Thompson on Neg. § 5404.

Knowledge of the company may be inferred from the notoriety of the habitual custom of the employees in disregarding the rule. 77 Ark. 405; 86· N. E. 243. The burden of proving contributory negligence was on appellant unless appellee's evidence within itself convicted him of the contributory negligence that caused the injury. 48 Ark. 460; 77 *Id.* 1. Leaving the cars upon the main track was an act of negligence on the part of appellant, authorizing a recovery by appellee for the injuries he received by reason of the collision. 67 Ark. 377. The judge is not required to sit still and see justice defeated. 76 'Ark. 258.

McCulloch, C. J. The plaintiff (appellee) sustained physical injury while in the service of defendant, and sues to recover the damages, alleging that the same were caused by negligence of other servants of the company. The injury occurred at night in October, 1907, when the plaintiff was a minor, eighteen years of age. He was working for the company at Van Buren, Arkansas, which is a division point, as call boy, his duties being to call enginemen at night to report for service. His headquarters, while on duty, were at the round house, which is about a mile distant from the town of Van Buren and from the passenger station.

After calling the engineer and fireman on the night in question to report for the purpose of taking out a west-bound passenger train, he stopped at the station and waited for the arrival of the incoming passenger train, in order to ride to the round house on the engine which was detached from that train. While riding on the engine, it collided with some freight cars on the main track, and plaintiff was severely injured. The engine was in charge of a hostler, and was backing along the main track at the time of the occurrence in question. The freight cars were on the main track temporarily, while switching was going on in the yards. No signal lights were on them, and, according to the rules of the company, none were required while they were temporarily left on the main track for switching purposes, but the undisputed evidence is that they were guarded by the men engaged in doing the switching, and that a stop signal was given to the approaching engine on which plaintiff was riding.

There is evidence tending to show that it was customary for call boys to be allowed to ride engines to and from the round house, and learned counsel for defendant frankly concedes in

argument that this question was correctly submitted to the jury, and that it is settled by the verdict. It is also conceded that the hostler in charge of the engine was guilty of negligence which caused the injury, and that the defendant is liable for the damages caused thereby, unless the plaintiff was guilty of contributory negligence, or unless he assumed the risk of the danger.

Under the act of March 8, 1907, the defendant is responsible to its servants for damages caused by the negligence of a fellow-servant. The statute reads as follows: "Section 1. That hereafter all railroad companies operating within this State, whether incorporated or not, and all corporations of every kind and character, and every company, whether incorporated or not, engaged in the mining of coal, who may employ agents, servants or employees, such agents, servants or employees being in the exercise of due care, shall be liable to respond in damages for injuries or death sustained by any such agent, employee or servant, resulting from the careless omission of duty or negligence of such employer, or which may result from the carelessness, omission of duty or negligence of any other agent, servant or employee of the said employer, in the same manner and to the same extent, as if carelessness, omission of duty or negligence causing the injury or death was that of the employer."

The hostler was known as a recklessly swift engine driver, and the evidence tended to show that plaintiff knew of this when he went on the engine to ride with him. It is therefore contended that with this information on the part of the plaintiff he is deemed to have assumed the risk, and error is assigned in the refusal of the court to give the following instruction: "VI. If you find that the plaintiff knew of the unfitness or habitual reckless running of the hostler, Boland, and with full knowledge of this he boarded the engine to ride to the round house, and as a result of the reckless or negligent running of Boland the collision occurred, and plaintiff was injured thereby, your verdict must be for the defendant."

Prior to the enactment of the statute above quoted, the master was not responsible in law for injuries to a servant caused by the negligence of a fellow servant unless he (the master) had failed to exercise ordinary care in the selection and employment of competent servants to work with the injured servant. The

risk of dangers from negligent acts of fellow servants was held to be the ordinary risks of service which each servant assumed. Risks of dangers arising from negligence of the master in employing incompetent or reckless servants could be assumed by a servant who took service, or continued in service, with knowledge and appreciation of the danger. *St. Louis, I. M. & S. Ry. Co.* v. *Hawkins,* 88 Ark. 548; *Kansas P. Ry. Co.* v. *Peavey,* 34 Kan. 472; *Hatt* v. *Nay,* 144 Mass. 186; *Davis* v. *Detroit & M. Rd. Co.,* 20 Mich. 105; *Latremouille* v. *Bennington, &c., Ry. Co.,* 63 Vt. 336. In this respect the statute has wrought no change, for it does not undertake to deal with that subject at all. It merely makes the master responsible to a servant who, while exercising due care for his own safety, is injured by the negligent act of a fellow servant, the same as if the negligence was that of the master.

Now, the servant could, before the enactment of this statute, assume the risk of danger created by the negligent act or omission of the master, and was deemed to have done so when he became aware of the situation created by the negligence and appreciated the danger. We think that, under the statute, a servant who becomes aware of a dangerous situation created by the negligence of a fellow servant and appreciates the danger must be held to have assumed the risk of such danger when he continues in the service with such knowledge and appreciation, for the negligence of the fellow servant is by the statute made the same as that of the master so far as it affects the responsibility of the latter, and if the risk of danger caused directly by negligence of the master can be assumed, no reason appears why risk of danger caused by negligence of the fellow servant cannot likewise be assumed.

But it is an altogether different question when we come to consider whether or not a servant, by knowingly taking service or continuing in service with a careless fellow servant, must be deemed to have assumed the risk of all negligent acts or omissions of which such fellow servant may thereafter be guilty. It would be absurd to say that a servant who takes or continues service with a master whom he knows to be habitually careless thereby assumes the risk of all danger arising from negligence of the master thereafter committed. The doctrine of assumed

risk is based on contract; and a servant, merely because he knows that his employer is habitually careless, does not contract that the employer is to be absolved from responsibility for all future acts of negligence.    Neither is he deemed, since the enactment of the statute, to have contracted to absolve the employer from responsibility for damages caused by future acts of negligence of a fellow servant, merely because he knows that the latter is habitually careless.    Under the statute, the negligence of a fellow servant is, as before stated, the same as that of the master, and must be tested by the same principles in determining whether or not the risk is assumed by an injured servant.    The statute merely prevents, as to certain classes of employers, the application of the doctrine which treats a danger created by negligence of a fellow servant as one of the ordinary risks of the service assumed by the servant.    It abolishes the doctrine of assumed risk to that extent, but no further, and makes the employer responsible to a servant for the negligence of a fellow servant the same as if it had been the negligence of the master himself.

When the collision occurred, the plaintiff was standing in the gangway between the engine and tender, and the tank on the tender mounted the trucks and crushed against the cab of the engine, closing up the gangway and thus crushing plaintiff's leg.    There was evidence to the effect that the gangway was the most dangerous place in which to stand.    The defendant requested the court to give the following instruction, which was refused: "VII.    If there were two places on the engine in which plaintiff could have ridden, one safer than the other, and this fact was known to plaintiff or was so apparent that one of his years, intelligence and experience would naturally see and appreciate it, and plaintiff in such event selected the less safe place, and his riding in such place caused or contributed to cause the plaintiff's injury, your verdict must be for the defendant."

We think the instruction was properly refused, for it made the plaintiff the insurer of his own safety, whereas the question was whether, under all the circumstances of the case, he was exercising due care for his own safety when he was injured by the negligent act of a fellow servant.    It was incorrect to say, as a matter of law, that plaintiff was guilty of negligence because he failed to select the place of greatest safety in which to ride, for

it was a question for the jury to determine whether or not, under all the circumstances, it constituted an act of negligence for him to stand in that place. *Choctaw, O. & G. Rd. Co.* v. *Thompson,* 82 Ark. 11; *Kansas City So. Ry. Co.* v. *Henrie,* 87 Ark. 443.

The court gave correct instructions submitting the question to the jury whether plaintiff was exercising due care for his own safety, and the jury found that he was free from fault.

The court erroneously gave instructions submitting questions of negligence upon which there was no evidence; but, as the undisputed evidence shows that the hostler was guilty of negligence which caused the injury, and the jury have found under proper instructions that the plaintiff was not guilty of contributory negligence, the liability of the defendant necessarily follows, and the erroneous instructions were harmless.

Judgment affirmed.