INTERNATIONAL HARVESTER Co. *v.* LAND.

5-2581                                                354 S. W. 2d 13

Opinion delivered February 19, 1962

*Wright, Lindsey, Jennings, Lester & Shults,* for appellant.

*McMath, Leatherman, Woods & Youngdahl,* for appellee.

JIM JOHNSON, Associate Justice. This is an action in tort. On April 22, 1960, Mack Farlin Land drove an International Harvester truck, the property of his father, Cyril Land, to the International Harvester Company shop at 190 East 6th Street in Little Rock for the purpose of having certain additional equipment installed.

John C. Bergman, assistant shop Manager for International Harvester Company, was advised by Mack Farlin Land that the gear shift lever on the truck was difficult to operate. After inspecting and manipulating the gear shift lever, Mr. Bergman raised the cab of the truck in order to make an additional check.

On this particular model truck, the cab is elevated by means of two pistons that are powered by the use of hydraulic pressure. A hydraulic pump, or jack, is located on the frame of the truck, and the truck is equipped with a handle which is inserted into the proper slot for elevating the cab. There is a valve located at, or near, the pump to control the flow of hydraulic fluid. Pictures of the cab as elevated aids an understanding.

The truck is equipped with a plate that may be used to hold the cab in the proper elevated position after it is elevated. The mechanism is designed with two slots in the shell of the cylinder so that the plate may be inserted in either of the slots and, depending upon which slot is used, the cab is held in either a fully elevated or partially elevated position.

As John C. Bergman was elevating the cab by use of the jack, he observed that it operated slowly, and he advised Mack Farlin Land that the mechanism needed additional hydraulic fluid. After being told by Land

that there was a leak in a hydraulic line, Bergman was having the leak repaired. After Bergman had elevated the cab as high as it would go with the reduced hydraulic pressure, the plate was inserted in a slot in the cylinder shell. There is a dispute in the evidence as to whether the plate was inserted by Bergman or Land. One of the International Harvester mechanics, W. J. Gartrell, proceeded with the repair of the fitting that was permitting the leakage of hydraulic fluid. Additional fluid escaped during the course of the repairs. After the repairs were completed, Gartrell secured additional hydraulic fluid to add to the system and proceeded toward the truck, accompanied by Mack Farlin Land and one, Glynn Land, a cousin of Mack Farlin Land. Gartrell detoured to his workbench to open the can of hydraulic fluid, and Mack and Glynn Land proceeded directly to the truck. Mack Farlin Land was in a position with his head under the upraised cab of the truck, when the truck cab fell and pinned his head against the frame of the truck, causing his death almost instantly. Suit was filed by appellee, administrator of the estate of Mack Farlin Land, deceased, on behalf of himself, his wife, and the estate, in the Circuit Court of Faulkner County, against John C. Bergman and appellant, International Harvester Company. Evidence was presented at the trial of the deep grief endured by the parents of Mack Farlin as a result of his tragic death. Evidence was also presented that during his lifetime he consistently contributed money to the support of his parents, that he did most of the work on their small farm, that both parents were in bad health and that they anticipated that he would continue to assist them financially, if he had lived. A verdict was rendered against International Harvester Company in the sum of $30,000. A verdict was rendered in favor of John C. Bergman, International Shop Foreman, who was supervising the work on the truck at the time of the fatality.

When the verdict of the jury was first returned into court, the trial judge, upon examination, ascertained that the jury had only filled in the amount of $30,000 in the

blank providing for the amount to be recovered on behalf of the estate. The other blanks were not filled in. The only damage sustained or claimed by the estate was $1,523, the amount of the funeral bill, as there was no indication of conscious pain and suffering. The trial judge did not accept this verdict but called counsel into chambers and without revealing the verdict discussed the matter fully with them. Counsel for the appellees suggested that the jury be sent back for further deliberation but counsel for the appellant made the following suggestion:

"I have no objection—I don't think I would have any grounds for objection—but I will state to the court that I have no objection to the Court attempting to ascertain what their intention was, and then aiding the jury in rendering a verdict that conforms to their intention."

After a discussion, this suggestion was adopted by the court, counsel for the appellees having assented. The trial judge returned to the court room and carefully questioned the jury to ascertain the intentions. The true verdict of the jury was determined, whereupon, the trial court entered judgment of $1,523 on behalf of the estate and $14,238.50 each for the use and benefit of Mr. and Mrs. Land against International Harvester Company. Judgment was entered for the defendant John C. Bergman. The International Harvester Company has appealed from the judgment entered against it.

As one of its points relied on for reversal, appellant strenuously urges that the trial court erred in its determination of the jury verdict and contends that the court should have declared a mistrial, or in the alternative the judgment should have been limited to the $1,523 funeral expenses claimed by the estate. From the record it is clear that the trial court handled the determination competently and fairly and that the verdict fairly rendered reflected the true intention of the jury. Particularly is this true in view of the above quoted

suggestion made by appellant's counsel which was followed by the court. See *Trailmobile* v. *Robinson,* 227 Ark. 915, 302 S. W. 2d 786.

For reversal appellant further urges that "in view of the judgment in favor of John C. Bergman, the evidence will not support a judgment against appellant" and that the judgment rendered is excessive. The appellees predicated their cause of action against International on two theories. One theory sought to charge International with the alleged negligence of its employee J. C. Bergman, a co-defendant below. The jury, however, found in favor of Bergman, and in so doing relieved International of responsibility on *respondeat superior.* Appellees, however, in the alternative, alleged that International was responsible in tort for the death of Mack Land on a "products liability" theory, that is, for defective design or manufacture of the truck and the plate designed for holding the cab in the elevated position. The principal question in this case, therefore, is whether there is substantial evidence of such defective manufacture to sustain the verdict of the jury against International. We hold that such evidence has been presented by the appellees.

It is undisputed that the truck was so manufactured that when the cab was elevated by its hydraulic jack, the floor of the cab would catch and hang precariously on the road ranger bracket, a maneuverable device attached to the gear shift lever by the manufacturer. In other words, the opening in the floor of the cab was fashioned so narrowly that it would not accommodate the free passage of the floor past the road ranger bracket. When this happened, as it frequently did on this model truck, the plate or safety mechanism, provided to keep the cab from falling on those in the vicinity of the truck, was rendered completely nugatory. This device consisted of a steel plate, inserted in a slot cut into the piston housing of the hydraulic jack. The base of the piston was supposed to rest flush against the metal plate and, if the piston was in this position, the plate was sufficient

to hold the cab in its raised position. However, since the floor of the cab, because of the narrow width of the opening, could not pass free of the road ranger bracket and instead caught and hung on it, as it frequently did and as the jury could have found it did on this occasion, the piston was suspended several inches from the steel plate. A drop of the cab from its precarious position on the road ranger bracket developed great force, sufficient to shear through the safety plate and allow the cab to fall unimpeded. In the absence of a showing that the road ranger bracket had been adjusted in a manner or position contrary to that for which it was manufactured, there was ample evidence presented from which the jury could have found here that the cab hung for a time on the road ranger bracket, slipped from this position, the piston sheared through the safety plate, the cab fell completely down and crushed the unsuspecting victim, Mack Land, who was standing by the side of the truck and leaning over so that his head was crushed by the cab.

The "products liability" doctrine is now common in our courts. The development of this type of litigation was inhibited for almost a century by the old English case of *Winterbottom* v. *Wright,* 10 Mees. & W. 109, 152 Eng. Rep. 402, decided in 1842 and requiring privity of contract as a basis for such a suit. The repudiation of *Winterbottom* in the famous case of *McPherson* v. *Buick Motor Co.,* 217 N. Y. 382, 111 N. E. n050, and the virtually unanimous acceptance of Judge Cardozo's reasoning by the American authorities has brought a large number of "products liability" cases to the courts. See, for example, *Chapman Chemical Co.* v. *Taylor,* 215 Ark. 630, 222 S. W. 2d 820, discussed in great detail in Harper & James, *The Law of Torts,* Vol. 2, Sec. 28.77, pp 1592-3. See also *Ford Motor Co.* v. *Fish,* 106 L. Rep. 743, 335 S. W. 2d 713, 2d appeal, 108 L. Rep. 47, 346 S. W. 2d 469, and Judge Miller's discussion of the Arkansas cases in *Green* v. *Equitable Powder Mfg. Co.,* 94 F. Supp. 126, 95 F. Supp. 127. Also see article on "products liability" in 28 Fordham Law Review, p. 776,

which is reviewed in Law Review Digest No. 10, page 72. In Chapter XXVIII of Harper and James, *The Law of Torts,* Vol. 2, pp 1534-69, entitled "Liability of Suppliers of Chattels" there is an excellent discussion of the duties owed by a manufacturer in the area of tort liability. These authorities point out on p. 1545 that "the existing law of negligence demands this duty of care where others are threatened by want of a feasible safety device wherever the foreseeable danger to them is unreasonable." On p. 1541 of the same chapter it is said:

"The maker of an article for sale or use by others must use reasonable care and skill in designing it and providing specifications for it so that it is reasonably safe for the purposes for which it is intended, and for other uses which are forseeably probably. And a person who undertakes such manufacturing will be held to the skill of expert in that business and to an expert's knowledge of the arts, materials, and processes. Thus he must keep reasonably abreast of scientific knowledge and discoveries touching his product and of techniques and devices used by practical men in his trade. He may also be required to make tests to determine the propensities and dangers of his product."

With regard to proving negligence in these cases, Harper and James state in the same Chapter on p. 1564:

"Where design or specifications are involved it usually appears or is admitted that the condition which proved injurious was created intentionally. If, then, the condition is also shown to be unreasonably dangerous, an inference of negligence is usually warranted."

Prosser states in the blacktype summary heading to Chapter 17 of his well known text, *The Law of Torts,* 2d Ed. p. 497:

"It is now generally agreed that a seller, or other supplier of chattels for a consideration, may be liable for harm to the person or property of a third person who may be expected to be in the vicinity of the chattel's

probably use, if he has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied.''

Under our decisions it was in the province of the jury in this case to determine whether the propensity of the floor of the truck cab to hang on the road ranger bracket, and thus render the safety plate ineffective, created an unreasonable danger to others, which might have been prevented by the exercise of ordinary care. *Ford Motor Co.* v. *Fish, supra.* A recent California case, *Brooks* v. *Allis Chalmers Mfg. Co.*, 163 Cal. App. 2d 410, 329 p. 2d 575 is factually similar to the case at bar. The plaintiff's decedent was killed when a boom on a crane fell. The plaintiff contended that the crane and boom were so constructed that the boom brake handle ''would become stuck and when in such position the brake handle could not be depressed to increase the brake pressure.'' The crane and boom contained a safety device called a ''boom dog'' which was supposed to keep the boom from falling. ''There was evidence that if the brake was not working properly, and the dog was on the point of the tooth, the boom could come down by jarring.'' The California Court held that the question of the manufacturer's negligence was for the jury. Other cases involving the failure of safety devices are *Edison* v. *Lewis Mfg. Co.*, 168 Cal. App. 2d 429, 336 P. 2d 286; *Stupp* v. *Fred J. Swaine Mfg. Co.*, Missouri 229 S. W. 2d 681; and *Carpini* v. *Pittsburg and Weirton Bus Co., et al*, 216 F. 2d 404. These cases hold that it is for the jury to decide whether the manufacturer took the proper precautions to protect the users of his chattels from harm or whether, by his design and manufacture, he subjected such users to an unreasonable risk of harm. The evidence of the plaintiff detailed above, which on appeal must be viewed in its strongest light, was sufficient to take this case to the jury. As to the amount of the verdict for the death of this son, we do not find it so shocking as to require a remittitur or reversal. It follows, therefore, that the judgment in all respects is affirmed.