TROY PRICE ET UX v. RAY DAUGHERTY ET AL

5-6056                                        486 S.W. 2d 528

Opinion delivered November 13, 1972

*Brockman, Brockman & Gunti,* for appellants.

*Bridges, Young, Matthews & Davis* and *Reinberger, Eilbott, Smith & Staten,* for appellees.

GEORGE ROSE SMITH, Justice. This is an action brought by the appellants, husband and wife, to recover damages for the wrongful death of their 19-year-old son, Troy Glyn Price. The appellees, defendants below, are Ray Daugherty, on whose farm young Price was working at the time of his accidental death, and W.T. Carter, whose welding shop made the stump grinder that was involved in the accident. In appealing from a verdict and judgment for the defendants the appellants con-

tend primarily that the court erroneously instructed the jury.

The facts must be narrated in some detail. A stump grinder is used to grind away low stumps on cleared land. The stump grinder consists essentially of a platform that has a belt-driven drum at the front end, two rubber tires at the rear end, and a powerful motor, mounted on the platform, that drives the grinding apparatus. The latter is a cylindrical sheet-iron drum which has cutting teeth affixed to the outer surface of the drum.

The entire unit is pulled by a tractor, on which the operator is seated. In grinding stumps the operator first starts the stump grinder's own motor, which revolves at a pre-set speed. The operator then mounts the tractor and drives to a stump, previously marked in some way to show its location. The toothed grinding drum is either lowered to the stump from above or brought slowly into contact with it from the side or rear, the operator remaining on the tractor during the process. In only a few minutes the powerfully driven teeth grind away the exposed part of the stump.

The fatal accident happened in the late afternoon, while young Price was grinding stumps by himself. The record makes it clear that the revolving toothed drum came to pieces, apparently because it was defectively welded together. The disintegrating parts of the drum were thrown forward and upward with great force. Price was killed immediately by being struck in the head by a flying piece of metal. The tractor seat was also damaged. When Price's body was discovered a few minutes later it was lying near what remained of the stump grinder, whose motor was still running. The tractor had become disengaged from the stump grinding unit and had traveled by itself for an eighth of a mile or more before coming to rest in a canal.

First, the appellants contend that the court erred, in the light of the facts, in submitting to the jury the

doctrine of assumption of risk, AMI 612 (Civil, 1965) being given. That instruction told the jury that if a dangerous situation existed, which was known to Troy Glyn Price, and if he voluntarily exposed himself to that risk, the jury should answer "Yes" to an interrogatory on assumption of risk. The interrogatory was in fact so answered.

We agree that the court erred. Assumption of risk occurs only when the injured person actually knows and appreciates the danger. The standard is a subjective one, being based upon what the particular person in fact sees, knows, understands, and appreciates. *McDonald v. Hickman,* 252 Ark. 300, 478 S.W. 2d 753 (1972).

Here there is proof that a stump grinder is a highly dangerous machine, but that testimony had to do with the normal operation of a well-built stump grinder. Needless to say, the defendants did not attempt to prove that the stump grinder which killed young Price was so defectively put together that it was for that reason highly dangerous. There is no proof that Price was aware of the defects in the machine. Yet that is the precise hazard that he had to be aware of in order to assume its risk.

There is an abundance of testimony from an expert witness that the grinding drum flew apart because it was poorly welded together. That, however, was a latent defect, to be detected only by one having some knowledge of or experience in welding. There is no testimony that Troy Glyn Price, a 19-year-old farm hand, had sufficient knowledge of welding to enable him to appreciate the hidden danger, much less that he actually knew of it. Hence the instruction should not have been given.

Counsel for the appellee Daugherty remark in their brief, in passing and without citation of authority, that any error in the submission of assumed risk was cured by the jury's finding, in response to interrogatories, that neither Daugherty nor Carter was negligent. Our rule, however, is that error is presumed to be prejudicial unless we can say with assurance that it was not. *Ark.*

*State Highway Commn.* v. *Fougerousse,* 248 Ark. 310, 451 S.W. 2d 459 (1970). Here the erroneous instruction improperly drew the jury's attention to the possibility that Troy Glyn had assumed the risk of some unspecified danger, thereby diverting the jury's minds from the real issue, that of the defendants' negligence. With the case in that posture we certainly cannot say with confidence that the error was harmless. That the jury answered the assumption of risk interrogatory in the affirmative shows beyond any possibility of doubt that that extraneous issue was actually discussed and passed upon during the jury's deliberations. It should not have been allowed to arise.

Secondly, we also hold that upon the evidence adduced at the trial below the court erred in submitting an interrogatory (actually unanswered) by which the jury might have found Troy Glyn to have been negligent. The expert testimony was to the effect that the poorly welded seams could have been detected by any one who had done any welding, had been around welding, or had had any experience in that field. Carter, who owned, and worked in, the welding shop where the stump grinder was welded together, undeniably had the necessary experience to enable him to detect the latent danger that is said to have caused the stump grinder in question to fly apart. Daugherty, the owner of the farm, had a welding shop on his place and stated in his testimony that he tries to weld a little bit if the occasion or necessity requires it, but he is not a qualified welder. Moreover, Daugherty was under a duty to exercise ordinary care to furnish young Price with a reasonably safe place to work. *Chapman* v. *Henderson,* 188 Ark. 714, 67 S.W. 2d 570 (1934). Thus the jury, had their minds not been distracted by the matter of assumed risk, might have found either Carter or Daugherty to have been negligent.

On the other hand, our attention is not called to any testimony indicating that Troy Glyn Price, a 19-year-old college student, had had any experience in the field of welding. We do not discuss the issue at length, however,

for the question may be developed in greater detail upon a retrial of the case. All that need be said at this point is that the jury, with no eyewitness evidence about the precise events immediately preceding Price's lonely death, could only speculate or conjecture about the possibility that his own negligence in operating the equipment had somehow played a part in the accident.

Thirdly, we find no error in the court's instructions telling the jury that the plaintiffs had the burden of proving, with respect to Carter, that the stump grinder was defective or unsafe when he delivered it to Daugherty, and, with respect to Daugherty, that it was defective or unsafe when Troy Glyn Price began to operate it on the day of his death. No reason is suggested why those instructions do not correctly fix the points at which the negligence of the defendants was to be evaluated. Fourthly, the court's ruling in response to a question by the jury need not be reviewed, for there is no likelihood that the same situation will be presented upon a new trial. Finally, the appellant Carter is not in a position to complain of the trial court's refusal to direct a verdict for Carter at the close of the plaintiff's proof, for the point was waived by Carter's action in offering his own proof. *Granite Mountain Rest Home* v. *Schwarz*, 236 Ark. 46, 364 S.W. 2d 306 (1963).

Reversed.

HARRIS, C.J., not participating.