FORREST CITY MACHINE WORKS, INC. *v.*
Rayburn ADERHOLD, by CROSS COUNTY BANK,
Wynne, Arkansas, Guardian of His Estate, and E.
Wayne ADERHOLD and Maureen ADERHOLD

81-17                                    616 S.W. 2d 720

Supreme Court of Arkansas
Opinion delivered May 26, 1981
[Rehearing denied June 29, 1981.]

34

*Wildman, Harrold, Allen, Dixon & McDonnell*, by: *Robert M. Johnson* and *Thomas J. Walsh, Jr.*, and *Shaver, Shaver & Smith*, by: *Tom B. Smith*, for appellant.

*Laughlin, Halle, Regan, Clark & Gibson*, and *H. David Blair*, for appellees.

ROBERT H. DUDLEY, Justice. Appellee, Rayburn Wayne Aderhold, by his guardian and parents, sued appellant, Forrest City Machine Works, for personal injuries sustained in a 1977 farm accident involving a grain cart which was manufactured by appellant in 1956. Aderhold, who was eight years old at the time of the accident, had accompanied his uncle to a farm where the uncle and two of Aderhold's young cousins worked. One of the cousins, a thirteen-year-old, was operating a tractor with a grain cart attached by means of an open power take-off line shaft which was controlled by the tractor operator. Aderhold had climbed up on the cart while the shaft was in motion and was told to get off. When he was climbing back down the ladder, he caught his pants leg on a part of the machinery and his leg was pulled into the rotating shaft. He sustained multiple leg fractures, had various operations, and is now disabled. Appellee sued appellant and the owner of the farm, who is not involved in this appeal, on theories of negligence and strict liability. A Cross County circuit court jury awarded appellee $235,000 compensatory damages plus $500,000 punitive damages.

The appellant contends that the issue of negligence should never have been submitted to the jury because: (1) As a matter of law, an open and obvious hazard is not unreasonably dangerous, and the manufacturer has no duty to warn of such a hazard; (2) there is no substantial evidence that appellant failed to comply with the 1956 state of the art concerning safety features on grain carts; (3) regardless of the theory applied, as a matter of law the circumstances leading to the accident were not foreseeable.

Under the "open and obvious" rule, a manufacturer of a product has no duty to guard against or give notice of dangers which are obvious or patent to the user. See *Campo* v. *Scofield*, 301 N.Y. 468, 95 N.E. 2d 802 (1950). We have never followed this rule in Arkansas, and do not now adopt it. The Florida Supreme Court in *Auburn Machine Works Co.* v. *Jones*, 366 So. 2d 1167 (1979) wisely observed:

The patent danger doctrine encourages manufacturers to be outrageous in their design, to eliminate safety devices, and to make hazards obvious. For example, if the cage which is placed on an electric fan as a safety device were left off and someone put his hand in the fan, under this doctrine there would be no duty on the manufacturer as a matter of law. So long as the hazards are obvious, a product could be manufactured without any consideration of safeguards ...

The patent danger doctrine protects manufacturers who sell negligently designed machines which pose formidable dangers to their users.

Manufacturers in Arkansas are not and should not be relieved of the duty to exercise due care in the design and manufacture of equipment merely because the dangerous feature is clearly exposed to those foreseeably using the machine. However, there is no duty on the part of a manufacturer to warn of a danger when the dangerous defect is open and obvious. As stated in *Larson Machine* v. *Wallace*, 268 Ark. 192, 600 S.W. 2d 1 (1980): "One cannot be heard to say that he did not know of a dangerous condition that was so obvious that it was apparent to those of ordinary intelligence." One must use ordinary care to protect himself from an apparent danger, and he may be barred from recovery from the manufacturer on grounds of contributory negligence or assumption of the risk, but this is for the jury to determine. See Larson, supra. The open and obvious rule will not serve as a defense, as a matter of law, to all bases of liability.

Appellant contends that there was insufficient evidence for the jury to conclude that the grain cart was manufactured in a manner that did not comply with the state of the art at the time of manufacture, and therefore, as a matter of law, it is not liable for a negligent design or negligent manufacturing. Even if "state of the art" were the Arkansas test, there is substantial evidence to support the jury finding that appellant's grain cart was not not manufactured in accordance with customary procedures at that time. According to the record, by 1956, the time of manufacture, various other

manufacturers were using safety devices to shield the power take-off unit.

Compliance with industry customs is not a defense as a matter of law to a negligence action. As we stated in *Verson Allsteel Press Co.* v. *Garner*, 261 Ark. 133, 547 S.W. 2d 411 (1977):

> [W]hile we consider this evidence [safety standards] ... pertinent and relative to the determination reached, such evidence is not controlling, i.e., customary methods, or accepted standards are not at all conclusive *and negligence may exist notwithstanding the fact that the method adopted was in accordance with customary procedures.* [Emphasis added.]

Appellant argues that it was not reasonably foreseeable that an eight-year-old would climb up on the cart, or that anyone would use the grain cart ladder while the machine was in operation, or that anyone would be oblivious to the danger of an open spinning power shaft.

This Court, in a 1962 products liability case, ruled that a manufacturer who fails to use reasonable care in the design and manufacture of a product is liable not only for the harm which may come to users of the product, but also for harm expected to come into contact with the product. *International Harvester Co.* v. *Land*, 234 Ark. 682, 354 S.W. 2d 13 (1962).

Viewing the evidence most favorably to appellee, we cannot say there was no substantial evidence from which the jury could find it was customary in Arkansas for youngsters to be operating farm machinery and that it was not unusual for an eight-year-old farm boy to be attracted to such machinery. The record shows that farming in Arkansas is frequently a family operation and all family youngsters may be expected to come into contact with the family's farm machinery. The record also contains sufficient evidence from which the jury could find that one might use the ladder on the grain cart while the power take-off was engaged.

Appellant next contends that even if it was negligent in the design and manufacture of the cart, appellee's injuries, as a matter of law, were proximately caused by his own assumption of the risk and by intervening causes.

In *Capps* v. *McCarley and Co.,* 260 Ark. 839, 544 S.W. 2d 850 (1976), we held that assumption of risk bars recovery where (1) a dangerous condition exists which is inconsistent with the injured party's safety, (2) the injured person is actually aware of the condition and appreciates the danger, and (3) the injured person voluntarily exposes himself to the danger which produces the injury. However, under this harsh doctrine, it is not sufficient for the defendant to prove that the plaintiff was generally aware of the risks or dangers of coming into contact with the product, but rather the defendant must prove that the plaintiff had knowledge of the specific danger and that he fully comprehended and appreciated that danger. As said in *Price* v. *Daughtery*, 253 Ark. 421, 486 S.W. 2d 528 (1972):

> Assumption of risk occurs only when the injured person actually knows and appreciates the danger. The standard is a subjective one, being based upon what the particular person in fact sees, knows, understands, and appreciates. *McDonald* v. *Hickman*, 252 Ark. 300, 478 S.W. 2d 753 (1972).

In order for appellant to prevail upon this point, we would have to hold, with all inferences in favor of appellee, that intelligent persons would only conclude that this eight-year-old child knew and appreciated the dangerous proximity of the grain cart's ladder to the drive shaft, and that as he climbed down the ladder, the shaft could become entangled with his pants, pull him from the ladder and horribly injure him. We do not find this strong proof in the record that was abstracted and affirm the trial judge in ruling that assumed risk was for the jury to decide. Likewise, we affirm the trial judge in submitting the issue of intervening cause to the jury.

Ark. Stat. Ann. § 85-2-318.2 (Supp. 1979), the statutory adoption of strict liability, was enacted in 1973. The grain

cart was manufactured in 1956, and obviously was designed before being produced. The accidental injury occurred after enactment of the statute. The trial court applied the statute and appellant argues that this violated the prohibition against retroactive application of legislation.

We find no constitutional or statutory prohibition to prevent the application of this statute in this case. The only express provisions in the Federal Constitution against retroactive laws forbids Congress to pass ex post facto laws or bills of attainder, Article I, § 9, No. 3, and forbid states to pass ex post facto laws, bills of attainder, or laws which impair the obligation of contract, Art. I, § 10, No. 1. Article 2, § 17 of the Arkansas Constitution also applies to bills of attainder, ex post facto laws and laws which impair the obligation of contracts. Many types of retroactive laws are not covered by these express prohibitions.

The due process clauses are frequently held to prevent retroactive legislation from taking property belonging to one and giving it to another, without regard to any prior relations between the parties. To determine if one has a protected property right the courts often look to see if a right has vested. Bryant Smith, in his articles, "Retroactive Laws and Vested Rights," 5 Texas Law Review 231 (1927) and 6 Texas Law Review 409 (1928), reprinted in Sands, *Sutherland Statutory Construction*, 4 Ed., Vol. 2, page 497, 1973 Edition, discussing vested rights, states:

> ***It is on the basis of this distinction also that the legislature, as to injuries not yet sustained, may deprive servants of their common law right of action for negligence or employers of their common law defenses, but may not so deprive either party after the injury has already occurred; that laws may change the rules of inheritance before but not after descent cast; or cure defective wills before but not after the death of the testator; that the location of public lands is immune to retroactive deprivation after a survey but not before, and so on.

We have concluded that no vested rights were violated

in this case. In this context a vested right exists when the law declares that one has a claim against another, or it declares that one may resist the enforcement of a claim by another. The statute in question does not declare that appellee has acquired a claim, for the products liability doctrine was recognized long before the statutory scheme of strict liability for products liability. The section of the statute applicable to this case simply provides that appellee does not have the burden of proving negligence in the design or in the manufacture of the grain cart. As to appellee, this is a procedural matter and not a substantive one. Hence, appellee has not acquired any substantive claim or right which is applied retroactively.

The jury found the appellant guilty of negligence in both the design and the manufacture of the cart. This renders moot the necessity to decide whether appellant lost a substantive vested right to resist the claim by losing the defense of lack of negligence. We do not reach that issue although we do note that no claim was revived and a modification of remedies is generally considered a valid area of retroactive legislation. Sands, *Sutherland Statutory Construction*, supra at § 41.09. Also, no man has a vested right to a particular remedy. *Commonwealth* v. *Commissioners*, 23 Mass. 501 (1828).

For these reasons we hold that appellee has lost no vested right, and the question is moot as to appellant. However, the doctrine of vested rights is not the only determinative factor and is not always followed in deciding whether to apply a law retroactively. Smith, in his articles, "Retroactive Laws and Vested Rights," supra, states:

> ... what of a law that, by legitimizing an illegitimate child, takes property from an heir who before the law had a perfect title in every respect and for all purposes, and gives it to a remote purchaser from the illegitimate? If the term "vested" means anything at all, some of these laws certainly take away vested rights, and yet such laws have been sustained. It is submitted that the distinction between vested and non-vested rights, like that between rights and remedies, or between jurisdic-

tional and non-jurisdictional defects in legal proceedings, is of use primarily as a basis on which to classify decisions after they have already been reached on other grounds.

Courts have traditionally applied laws retroactively when they deem it just for "courts do not regard rights vested contrary to the equity and justice of the case." *State* v. *Newark,* 30 Dutch 185 (New Jersey 1858). This brings us to one of the deciding factors in the retroactive application of laws — public policy. The legislature stated the public policy in § 3 of this act as follows: "This enactment is remedial in nature and in no way affects or limits any other existing remedy." If an act does violence to our sense of justice it is found to be contra to public policy. In *General Motors* v. *Tate,* 257 Ark. 347, 516 S.W. 2d 602 (1974), we thought it would be unfair to relate back this statute when both the manufacture and the accident took place before the act. However in this present case, the accident took place after the statute was enacted. We deem that to be a distinguishing factor in the considerations of public policy.

The fact that the legislation is remedial is also significant. As we stated in *Harrison* v. *Matthews*, 235 Ark. 915, 362 S.W. 2d 704 (1962):

> The rule by which statutes are construed to operate prospectively does not ordinarily apply to procedural or remedial legislation. "The strict rule of construction contended for does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. These should receive a more liberal construction, and should be given a retrospective effect whenever such seems to have been the intention of the Legislature." *State ex rel. Moose* v. *Kansas City & M. Ry. & B. Co.,* 117 Ark. 606, 174 S.W. 248.

For these reasons we affirm the trial court in submitting the statute to the jury in this case. In any event, the matter was rendered moot by the jury's specific finding that

appellant was guilty of negligence in the design or manufacture of the cart which was the proximate cause of the accident, and the specific finding that the cart was in a defective condition which rendered it unreasonably dangerous at the time it was manufactured. See *St. Louis I.M. & So. Ry. Co.* v. *Ledford,* 90 Ark. 543, 119 S.W. 1123 (1909).

The eight-year-old appellee was injured on the grain cart which was attached to a tractor driven by his thirteen-year-old cousin. The cousin had been hired to operate heavy and dangerous farm machinery in violation of Ark. Stat. Ann. § 81-702 (Repl. 1976), which provides no person under sixteen shall be employed in any occupation dangerous to life or limb. Appellant offered an instruction that a violation of this statute is evidence of negligence to be considered with all other facts and circumstances. The trial court refused to give the instruction and we affirm. The purpose of this statute is to protect child employees; in this case a thirteen-year-old tractor driver. This child protection statute does not prescribe standards of conduct for child employees toward third persons which absolve a manufacturer from liability. Before the violation of a statute may be used a evidence of negligence, it must be shown that the party seeking the protection of the statute is a member of the class of persons for whose benefit the statute was passed. Appellant manufacturer simply is not a member of that class. We do not imply what our ruling would be if appellant were pursuing a claim for contribution against the employer who hired the thirteen-year-old, for that question is not before us. Likewise, the appellee has dismissed his claim against the employer, and we do not consider the application of violation of the statute as between them.

The jury returned a verdict in favor of appellee in the amount of $285,000 compensatory damages. We cannot say there is no substantial evidence to support this verdict, and we decline to order or suggest a remittitur. We affirm the $285,000 award of compensatory damages.

The jury also returned a verdict in favor of appellee in the amount of $500,000 punitive damages. Both parties have submitted unusually good briefs, and have engaged at

length upon a philosophical discussion of the propriety of awarding punitive damages in a products liability case. We have concluded that there are valid reasons for allowing punitive damages in products liability cases. The Supreme Court of Alaska in *Sturm, Ruger & Co.* v. *Day,* 594 P. 2d 38 (1979), persuasively stated:

> We believe that as a matter of public policy, punitive damages can serve useful functions in the products liability area. For example, the threat of punitive damages serves as a deterrence function in cases in which a product may cause numerous minor injuries for which potential plaintiffs might decline to sue, or in cases in which it would be cheaper for the manufacturer to pay compensatory damages to those who did present claims than it would be to remedy the product's defect. In addition, if punitive damages could not be awarded in the products liability context, a reckless manufacturer might gain an unfair advantage over its more socially responsible competitors.

Arkansas Model Jury Instruction 2217 is the proper instruction to give in a products liability case, when warranted by the evidence. However, we have examined the record in this case and have concluded there was insufficient evidence to submit the issue of punitive damages to the jury. The proof with regard to design and manufacture amounts to simple negligence, and we can find no substantial evidence to sustain a finding of a reckless disregard from which malice would be inferred.

We reverse the award of $500,000 punitive damages and affirm the award of $285,000 compensatory damages.

Affirmed as modified.

HICKMAN and HAYS, JJ., concur in part and dissent in part.

HOLT, J., not participating.

DARRELL HICKMAN, Justice, concurring in part, dissent-

ing in part. I agree that the judgment for compensatory damages should be affirmed in this case. I dissent to reversing the punitive damages award.

In my judgment the most difficult legal issue in this case is the application of Arkansas's strict liability statute. Ark. Stat. Ann. § 85-2-318.2 (Supp. 1979). This law was passed in 1973. The machine in question, a grain buggy, was built in 1956. The accident occurred after the statute was enacted. The majority has skirted some previous cases of ours which say that Arkansas' strict liability statute is a new cause of action. See *General Motors* v. *Tate*, 257 Ark. 347, 516 S.W. 2d 602 (1974). It is my judgment that the language in the *Tate* case and other cases that say strict liability is a new cause of action is wrong. The strict liability statute simply changes the burden of proof. The statute does not make a manufacturer liable for conduct that it would not have been liable for before the statute. It simply provides that a plaintiff only has to show a defect in the manufacture of a product rather than show the manufacturer was negligent. In such cases it is virtually impossible to show negligence. The statute simply shifts the burden of proof; the statute is therefore purely remedial and creates no new cause of action. It is a fundamental rule of law that statutes relating only to remedies or modes of procedure are generally held to operate retrospectively. *Hardman* v. *Personnel Appeal Board,* 100R. I. 145, 211 A. 2d 660 (1965). A statute or amendment which furnishes a new remedy, but does not impair or affect any contractual obligations or disturb any vested rights, is applicable to acts done prior to its passage if the proceedings are begun after the act is passed. *Schmitt* v. *Jenkins Truck Lines, Inc.,* 260 Iowa 556, 149 N.W. 2d 789 (1967).

The grain buggy was without question negligently designed. A ladder was built directly over the drive shaft that turned a screw in the bottom of the buggy. The drive shaft was designed to be attached to a power take-off on a tractor. Anyone familiar with farm equipment knows that it is sometimes necessary to get off a tractor while the power take-off is operating. It is not smart, but it is done. By placing a ladder over the power take-off, without any guard whatsoever, it is inevitable that someone would climb that

ladder and hurt himself. A power take-off is one of the most dangerous instruments on a tractor.

At the time this grain buggy was manufactured it was not customary to completely cover the power take-off shaft although many manufactured products did provide some kind of guard. The evidence did demonstrate, however, that most manufacturers of such buggies placed some sort of shield or step below the ladder to protect anyone who climbed the ladder. There was *nothing* on this grain buggy and it was inevitable that someone would mount the ladder or dismount the ladder and get caught in the power take-off. In this case it was a small child.

This negligence, in my judgment, amounted to gross negligence and a reckless disregard for the user's safety. Therefore, I would not reverse the award of punitive damages but only reduce it to the amount that the plaintiff asked for which is $150,000.00. The trail judge remarked after the jury returned a verdict for $500,000.00 that the appellate court would reduce it to the amount prayed for.

The majority finds that there is no substantial evidence to support punitive damages. I find at least two instances of substantial evidence. The first is the design of the machine itself and the failure to provide a guard or step; the second is the fact the manufacturer had received notice that at least two lawsuits had been filed for injuries occurring as a result of the design of this machinery and the fact that the manufacturer made no effort to correct the defect in the design or to notify any of the purchasers of the grain buggy of the possible danger. To me these acts reflect a reckless disregard for the safety of others from which malice may be inferred.

HAYS, J., joins in this concurring opinion and dissent.