FULLERTON *v.* HENRY WRAPE COMPANY.

Opinion delivered December 2, 1912.

1.   MASTER AND SERVANT—ASSUMED RISKS.—The rule that a servant is presumed to have assumed the ordinary risks incident to the employment in which he is engaged is subject to the limitation that he must have knowledge not only of defects but that the defects exposed him to danger.   (Page 437.)

2.   SAME—ASSUMED RISKS.—If the danger arising from defective appliances is so obvious as to be apparent to a person of ordinary intelligence, the law will charge the servant with the knowledge of the danger. (Page 437.)

Appeal from Greene Circuit Court; *W. J. Driver*, Judge; affirmed.

STATEMENT BY THE COURT.

Appellant brought this suit against appellee to recover damages for injuries sustained by her husband which resulted

in his death, and which were received while he was in the employment of appellee.   The facts are as follows:

Appellee was a corporation engaged in manufacturing white oak heading in its factory at Paragould, Arkansas. As a part of its machinery therefor, appellee maintained and operated a circular ripsaw attached to a revolving shaft set in boxing made fast to a stationary frame.   The saw was eighteen inches in diameter and about one-third of it extended upwards between two flat boards which constituted a table on top of the frame work.   The saw revolved very rapidly, and was used to rip white oak heading, which is a piece of white oak twenty-two inches long, three quarters of an inch thick and from six to twelve inches wide.   There was a knife or spreader made of iron or steel set right back of the saw to keep the boards from pinching the saw.   Appellee operated a number of ripsaws, and it was its custom to shut down four times a day for each man to look at his saw and to change the saws when they became dull or out of set.   It was the sawyer's duty to change the saws when they are dull or out of set. On the 18th day of August, 1911, Andy E. Fullerton was operating said ripsaw.   He stood in front of the saw in the usual way and placed the piece of white oak heading against the saw, and after it had been cut for a distance of sixteen and one-half inches the back part of the saw became pinched in the piece of heading.   This had the effect to draw the piece of heading to the top of the saw.   It then flew back and struck Fullerton in the abdomen and caused the injuries from which he died about two days later.   The saw in question was unguarded.   The purpose of a guard on a saw of this kind is to prevent the piece of heading from flying back when the saw becomes pinched.

Appellant adduced evidence tending to show that the saw became pinched when it was dull or out of set.   The evidence for the appellant also showed that the spreader on the saw-rig in question was thinner than the saw, and that on this account the saw might become pinched; that the purpose of the spreader was to keep that part of the heading which had been cut from coming together and pinching the saw.   The saw-rig in question had been shut down one hour and fifteen minutes before the accident occurred, but the testimony does not disclose

whether the saw was changed by Fullerton at that time or not. The man who operated the saw just after Fullerton was struck by the piece of heading testified that the saw appeared to be dull, but that he could not tell whether it was out of set or not.

The decedent had worked in the factory of appellee for six or seven years according to the testimony of one witness. His son testified that he had worked there for about eleven years. For the last two years of his service he operated the saw in question, and from June 3, to August 18, the time of the accident, he operated it continuously. Appellee had other saw-rigs where the operator stood at the side of the machinery to operate them. They were so constructed in order to lessen the danger to the operator from the pieces of heading flying back when the saw became pinched. On the day of the accident Fullerton complained to the manager of the mill about the defective condition of the ripsaw and saw-rig. The manager told him to go ahead and run it, and he would have it fixed. The accident occurred two or three hours after this conversation.

The jury returned a verdict for appellee, and the case is here on appeal.

*Johnson & Burr,* for appellant.

A servant does not assume the risk unless he knows the defect or existing condition and also appreciates the danger arising therefrom. It does not necessarily follow from the mere fact that he knows the defect or existing condition that he appreciates the danger, but whether he did appreciate the danger arising therefrom is a question for the jury. 80 S. W. 292, 296; 145 S. W. 879; 141 S. W. 1176, 1178-9; 96 Ark. 206, 131 S. W. 960; 95 Ark. 291, 129 S. W. 88; 92 Ark. 102-108.

*Block & Kirsch,* for appellee; *C. L. Marsilliot,* of Memphis, Tenn., of counsel.

From the facts developed in evidence the court correctly instructed the jury that deceased "was an experienced servant in the use of the ripsaw machine complained of, and any risk, danger or hazard from the use of the same without a guard was open and obvious to his senses; and that when he under-

took to operate such ripsaw in its obviously unsafe condition, if it was unsafe in that condition, he assumed, as a matter of law, the risks, dangers and hazards flowing therefrom, and defendant would not be liable for an injury to Fullerton occasioned by its use." 95 Ark. 560; 97 Ark. 486; 1 Labatt, Master & Servant, § 259; *Id.* § 263; 67 Ark. 209; 79 Ark. 20; 82 Ark. 11; 90 Ark. 407.

If a hood or guard could be devised that would have prevented a "fly back," such as caused the death of deceased, yet there could be no recovery under the facts of the case, particularly the admitted fact that deceased was offered the choice of a machine with a guard or the machine without the guard, and chose the latter. He not only knowingly assented to occupying the place set apart for him by the master, but occupied it as a matter of preference. 56 Ark. 252; 81 Ark. 343; 55 Ark. 483; 86 Ark. 507; 90 Ark. 387.

HART, J., (after stating the facts). It is true, as contended by counsel for appellant, that the rule that an employee is presumed to have assumed the ordinary risks incident to the employment in which he is engaged is subject to the limitation that he must have knowledge not only of the existence of defects but must also be charged with knowledge that the defects exposed him to danger. It is equally well settled, however, that if the danger arising from the defects is so obvious as to be apparent to a person of ordinary intelligence the law will charge the servant with the knowledge of the danger. *Davis* v. *Railway*, 53 Ark. 117; *A. L. Clark Lumber Co.* v. *Northcutt*, 95 Ark. 291; *Asher* v. *Byrnes*, 101 Ark. 197; *St. Louis, I. M. & S. Ry. Co.* v. *Owens*, 103 Ark. 61.

The trial judge recognized the principle that the servant's knowledge of a defect is a bar to his action only when it was apparent that he understood the risks created by that defect, but considered that the danger arising from using the machinery in its alleged defective condition was unmistakably obvious to the decedent. For this reason the instructions given by the court limited appellant's right to recover to the sole issue of decedent's complaint about the defective condition of the machinery and the master's promise to repair. Upon this action of the court counsel for appellant assign error.

All of the witnesses testified that the saw revolved very

rapidly, and that when it became pinched for any reason the piece of heading which was being sawed would be forced to the top of the saw and would then fly back with considerable force. The purpose of the spreader was to keep the piece of heading from pinching the saw and the purpose of a guard was to keep the piece of heading from flying back and striking the operator when the saw became pinched. The decedent had worked at appellee's mill for a period of time variously estimated from seven to eleven years and had worked at the saw in question at intervals for two years just preceding the accident. He commenced regularly to operate the saw on the 3d of July preceding the accident and worked there up to the time of the accident which occurred on the 18th of August. It was the sawyer's duty to remove the saw when it became dull or out of set. The decedent was a sawyer of experience, and the fact that the saw was unguarded, and that the spreader was thinner than the saw, and on this account was likely to cause the saw to become pinched, are facts that were obvious to the decedent. This is conceded by counsel for appellant, but they contend that the decedent did not realize or appreciate the danger from using the saw in its defective condition; but it seems to us that the danger arising from the defective conditions as they are alleged to have existed was equally obvious to the decedent. As we have already seen, the testimony shows that they were known to all the other servants of the company who had no more experience in the use of the saws than had the decedent. If the danger was obvious and patent to them, it was equally so to the decedent, when his age and experience in the use of machinery is taken into consideration.

Moreover, the testimony of the appellant shows that the decedent made complaint about the defective condition of the machinery on the very day of the accident, and the master promised to repair it. The fact that he made the complaint is inconsistent with the idea that he did not realize the danger from using it in its alleged defective condition, and shows that he appreciated the danger which might result from a continued use of the machinery before the alleged defects had been remedied.

No other assignment of error are urged for a reversal of the judgment, and the judgment will be affirmed.