Vanoven *v.* Hardin.

5-2322                                          344 S. W. 2d 340

Opinion delivered March 20, 1961.

*Yingling, Henry & Boyett* and *Victor Nutt,* for appellant.

*Eldridge & Eldridge,* for appellee.

Paul Ward, Associate Justice. This litigation was instituted by appellants to recover damages for having contracted dermatitis while chopping cotton which had been sprayed with an insecticide. At the close of the testimony by both sides the trial court instructed a verdict in favor of appellee on the ground that there was ''no substantial evidence in the record upon which the jury could base a verdict, or finding of negligence, upon the part of the defendant . . . which was a proximate cause of the injuries complained of by plaintiffs.'' Appellants now prosecute this appeal to reverse the trial court.

There is little if any dispute as to the essential facts involved, so this appeal presents primarily a question of law. The specific injury complained of was suffered only by Essie Vanoven and we shall hereafter refer to her as the plaintiff or the appellant.

Plaintiff (and her husband) were employed by appellee, Hardin, to chop cotton on his farm. While so engaged on August 18, 1958, appellant had worked less than a half day when she noticed a burning sensation on her hands. The field where she was working had recently been sprayed with an insecticide commonly referred to as 3-10-40. She worked about half of the following day when her hands became so sore that she had to quit work, and on the 20th she went to see a doctor. She returned to the doctor every other day for awhile until the condition was under control, but on January 1, 1959, she entered the hospital for 7 days. She was examined by other doctors and skin specialists and all agreed that she was afflicted with dermatitis. Some of their testimony was to the effect that the dermatitis was caused by coming in contact with the insecticide. Appellant had been unable to do field labor since. Mrs. Vanoven admits that she knew the field had been sprayed with an insecticide, and that the substance had been used previously on appellee's property where she and her husband lived.

In determining whether, under the facts in this case, any actionable negligence on the part of appellee has been shown, two important facts have been clearly established and must be considered. One, there is substantial evidence to show appellant contracted dermatitis as a result of coming in contact with the insecticide which had been recently sprayed on the field in which she was working. The other is that she was allergic to the said insecticide. This latter fact was shown by the uncontradicted medical testimony, and it is admitted in appellants' brief.

The decisive question is whether there is any substantial evidence in the record to show negligence on the part of appellee. If there is, of course the case must be reversed, but otherwise it must be affirmed. Put another way: Was appellee, acting as a reasonable and prudent person, under any duty to warn appellant that she might contact dermatitis by chopping cotton on this particular occasion?

In order to show appellee knew, or should have known, that he was placing appellant in a position of peril

and that he had a duty to warn her of the peril, appellants must rely primarily on the following facts and circumstances disclosed by the record.

(a) The bag in which the insecticide was delivered to appellee had attached the following tag or label: "CAUTION: Avoid breathing of dust. Avoid contact with skin and eyes. Wash thoroughly after handling. Avoid contamination of feed and foodstuffs. Avoid the use of this product on edible portions of food crops where there is a possibility of residue or flavor remaining at harvest. DDT insecticides may be injurious under certain conditions to Cucurbits, Tomatoes and Beans. Do not use on cucumbers. Do not use on forage crops to be fed to dairy animals or to animals being finished for slaughter. Do not apply where there may be root crops, including peanuts, in the rotation plan. Some fruits and other plants are susceptible to injury from sulfur under certain climatic conditions. The user is advised not to use sulfur on any crop unless local use has proved that sulfur is safe in that locality."

(b) Dr. Calvin Dillaha who saw and examined appellant and whose qualifications were admitted testified, among other things, as follows: Q. "Is DDT a known irritant to a number of people?" A. "Sensitiveness in DDT does occur, but it is not common." Q. "What about Benzene Hexachloride?" A. "I have no definite knowledge of this chemical except its chemical structure. It is, I am told, in the plant where they make this, sensitivity to it is very common."

The chemical composition of 3-10-40, the insecticide used in this case is as follows:

| | |
|---|---|
| Gammaisomer of Benzene Hexachloride | 3% |
| Other isomers of Benzene Hexachloride | 3% |
| Dichloro Diphenyl Trichloroethane | 10% |
| Sulfur | 40% |
| Inert ingredients | 44% |
| Total | 100% |

Set out hereafter are the facts and circumstances, disclosed by the record, relied on by appellee to show that he was not negligent in failing to warn appellant she might be in danger of injury.

(a) The undisputed evidence is that 3-10-40 is commonly used as a commercial cotton poison. It is disclosed that 34,076,655 pounds were used in Arkansas during the year 1955 alone, and that it has been used as such since 1949 at least.

(b) There is no showing that any one has ever previously contracted dermatitis as a result of working in a field sprayed with 3-10-40. Dr. Fulmer stated he had never treated any patients who were injured by 3-10-40, and that he had never heard of such a case in a factory or otherwise. Dr. Lincoln stated that he had done experimental work with 3-10-40, that during one year he had it hand dusted with no protective clothing and no ill effects resulted. Thomas W. Clark, who is in the crop dusting business and dusted appellee's farm, stated that he and his helpers had handled quite a bit of 3-10-40 without using gloves and none of them ever contracted dermatitis.

As pointed out previously there is hearsay testimony in the record that some people who worked in the plant where benzene was processed were sensitive to it, but, for several reasons, we do not think that fact (if it is a fact) is of such significance as to show negligence on the part of appellee in failing to warn appellant. First, working in a factory is not analogous to working in an open field. Secondly, in the factory the pure benzene was handled, but that element is only 6% of 3-10-40. Also, insofar as the record reveals, those who were affected may have been allergic to benzene.

In spite of the above record and notwithstanding appellant was allergic to 3-10-40, it is argued that appellee would be liable under the correct principle of law, applicable in such cases. To sustain that principle reliance is placed on the decisions presently mentioned.

*Barber* v. *Parker,* 190 Ark. 34, 76 S. W. 2d 973; *Harmon* v. *Ward,* 202 Ark. 54, 149 S. W. 2d 575; *Sligo Iron Store Company* v. *Guist,* 103 Ark. 618, 147 S. W. 78; *Ward Furniture Mfg. Co.* v. *Mounce,* 182 Ark. 380, 31 S. W. 2d 531; and *Cockerham* v. *Barnes,* 230 Ark. 197, 321 S. W. 2d 385, are cited for the rule that the employer has a duty to warn an employee of hidden danger to which he may be subjected. We have examined these cases and find that they are not helpful here, but merely sustain the familiar rule that the master has a duty to furnish his employees a safe place to work and to warn of hidden dangers of which he is, or should be, aware. In the first two cases it is stated that the employer knew of the danger but failed to warn thereof. In the *Guist* case the employer knew the guard had been removed from a ripsaw but failed to warn the employee, and in the *Cockerham* case the master's negligence was held to be a contributing cause. None of the cases deal with what constitutes "foreseeability" of danger on the part of the master or employer.

Appellants cite authorities from other jurisdictions dealing principally with chemical compounds such as lotions to be applied to the face or body which they contend place a burden on the manufacturer to warn the user of any and all possibility of injury incidental to their use by the customer. One such authority is noted below.

*Wright* v. *Carter Products, Inc.,* 244 F. 2d 53, is a case where appellants were injured by the application of a deodorant called "Arrid" and the trial court dismissed their complaint. The proof showed that "Arrid" contained aluminum sulphate which is an astringent which causes the pores of the skin to close for a period of time; that it was advertised as "safe" and "harmless" and "would not irritate the skin," and that appellee knew it would irritate the skin, having had 373 complaints in 3 years, the appellate court remanded the cause for the trial court to "consider (1) whether, in the exercise of reasonable precaution, the defendant in 1951 *could have foreseen* that at least some of the potential users of Arrid would suffer serious injury from the use of the product."

(Emphasis supplied.) We have found numerous other decisions in harmony with the above and which, in effect, generally place upon the manufacturer of lotions and other similar products the duty to obtain the best medical and scientific information available in order to determine whether the products might be harmful to the ultimate user. The general rule announced in these cases appears to be that the manufacturer is liable if it could reasonably foresee injury might result from use of the product, even in a few instances, but fails to warn the users.

We are not convinced that the same rule of "foreseeability" applied to the manufacturer and seller of lotions which are to be applied regularly to the face or body should be applied in the case of insecticides where the injured party, as here, comes in contact with it only in an open field. Regardless, however, of how the rule of "foreseeability" and the duty to warn is applied in any case, the general rule seems to be that the manufacturer or employer is not required to foresee that someone might be affected because of his peculiar sensitivities to the substance causing the injury. In the case of *Nina Merrill* v. *Beaute Vues Corporation, et al,* 235 F. 2d 893, appellant was injured by using a permanent hair waving product manufactured and sold by the defendants. From an adverse judgment in the trial court an appeal was taken to the U. S. Circuit Court of Appeals. The court noted other cases in which it was held no liability existed "on the factual premise that the injury was due to the buyer's individual idiosyncrasy."

We think the rule above announced is sound and that its application calls for an affirmance of this case. It is conceded that appellant was allergic to 3-10-40. Neither she or the appellee was aware of her peculiar sensitiveness. There is nothing in the record to show or to lead appellee to believe she would have contracted dermatitis if she had not been allergic to the insecticide.

Although this particular kind of case is one of first impression in this state, our court, in the case of *Franke's, Incorporated* v. *Bennett,* 201 Ark. 649, 146 S. W. 2d 163,

has indicated its adherence to the rule announced in the *Merrill* case, *supra*. There appellee became ill from eating scallops prepared by appellant, and recovered a judgment in the trial court. In reversing the case this court said:

"But, if we assume she became ill from eating the scallops, still this does not prove that they were bad. She might be allergic or susceptible to them, so that they would make her ill, even though they were entirely wholesome."

It is our conclusion therefore that the judgment of the trial court should be, and it is hereby, affirmed.

Affirmed.

McFADDIN, J., concurs.