JAMES E. SMITH v. OSCAR E. SNIDER

5-5035                                          445 S. W. 2d 502

Opinion delivered October 13, 1969

*Lee Ward,* for appellant.

*Barrett, Wheatley, Smith & Deacon,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant sued appellee on account of a back injury allegedly sustained by him while assisting in moving a pump house on appellee's farm. Appellee moved for a directed verdict upon the ground that appellant had failed to show actionable negligence and had shown by his own testimony that he had assumed the risk involved. The trial judge granted this motion, finding that appellant assumed whatever risk was involved and dismissed the complaint. Appellant objected upon the ground that he could not be charged with having assumed the risk because he was without knowledge of the risk.

Appellant Smith was the son-in-law of appellee Snider. Smith had full-time employment but on his day off worked for his father-in-law on the latter's farm. Bill Rolland, the only full-time employee on that farm, had worked there since 1951. Snider, when called as a witness for appellant, testified that he directed Rolland and the latter's father to take a flatbed truck and move a pump house. When the elder Rolland said that his back was hurting, Snider told Bill to get Smith and that Floyd Silver might assist them in moving the structure. He gave no instructions as to the method of loading it and felt that Rolland should know how to do so.

The pump house, built of cypress in 1962 or 1963, was about four feet wide, five or six feet long, and four to four and one-half feet high. It weighed 340 to 400 pounds. It was ceiled and insulated. It had only been moved on one occasion previously. Smith had assisted Rolland on this previous occasion when the building was "rolled." Smith testified that he was familiar with the pump house, knew how it was constructed and knew it was heavy. He stated that after he and Rolland "kind of walked" the house up to the flatbed trailer, lifted one

end up and put it on the trailer, they got hold of the other end and pushed and scooted it according to Rolland's instructions. While he was engaged in the lifting thus involved, Smith was struck by a burning pain in his back. The pain was not sufficient to prevent him from continuing to work. The next day he consulted a physician.

Smith testified that he had no previous experience in moving or loading such things as pump houses and that he simply followed Rolland's directions. Snider had confidence in Rolland's ability to load the house. Rolland stated that he had moved heavy equipment on the Snider farm many times. In retrospect, both Snider and Rolland felt that there probably would have been a better and safer method for loading the house. Snider said that it might have been jacked up or skidded but not rolled. He also thought that it might have been pulled onto the trailer by a tractor. Rolland said that it might have been "skidded" or "rolled" onto the trailer. Smith did not object to helping on the project and he did not suggest that any method other than that employed be used. He admitted that he had stated that he supposed the method employed was the best way.

Appellant contends that Rolland neglected to obtain the assistance of another man and that his knowledge of the risk was not equal to that of appellee or of Rolland. The holding of the trial court was correct. This case is strikingly similar to *Luten Bridge Co.* v. *Cook*, 182 Ark. 578, 32 S. W. 2d 438. There a carpenter employed by the bridge company was sent to assist two other employees in the removal of heavy wooden forms supporting concrete bridge girders. He suffered a rupture while engaged in this task, which was later accomplished by him and the other employees by a method other than that being employed at the time of his injury. The injured carpenter had not previously done work of this sort and was given no instructions as to the manner of removal. He contended that the failure

of the employer to furnish sufficient help made the work dangerous and caused his injury. There, we said:

"Liability on the part of the master, the bridge company, is predicated upon the proposition that appellee was directed to perform a service, which was made dangerous by reason of not having been furnished sufficient help, and that the work could have been performed safely had sufficient help been supplied.

We have stated the testimony in the light most favorable to appellee, as we are required to do in testing its legal sufficiency; but, when thus viewed, it appears to us that appellee must be held, as a matter of law, to have assumed the risk of his injury. He did not act in an emergency. The case is not one where the form was about to fall and be damaged, or injure appellee or one of his fellow servants unless he attempted to support it. In fact, he sustained his injury in an unsuccessful attempt to remove the form. To use his own expression, he 'surged' against the form with a force so great that he ruptured himself. No one could know better than he what force might safely be applied, and the danger of injuring himself if he overtaxed his strength was an obvious one, the risk of which he must be held to have assumed."

Certainly Smith knew the weight of the pump house and his own physical capacity. There were no concealed dangers. Under these circumstances, he certainly must be said to have assumed any risk involved in the undertaking to move the building. In *Missouri Pacific Railroad Co.* v. *Vinson*, 196 Ark. 500, 118 S. W. 2d 672, we said:

"* * * Two men performing the simple task of carrying and stacking crossties will be charged with knowledge that such ties possess weight, and that

> the law of gravity has not been suspended. Every man will be presumed to know more about his own strength and to. be better informed as to his ability to lift, than is a stranger; and every manual task, however menial, requires the exercise of some intelligence upon. the part of those who undertake to perform it."

There is an unvarying pattern in all our cases of this type. We adhere to them.

Appellant suggested, for the first time, in oral argument, in rebuttal, that assumption of the risk is only a form of negligence which should be compared by a jury with the alleged negligence of the employer pursuant to our comparative negligence statutes. We do not consider this argument because it was neither raised in appellant's objection to the directed verdict, nor asserted in the briefs in this case in any way.

The judgment is affirmed.