**Georgia I. RHOADS, Plaintiff,**

v.

**SERVICE MACHINE COMPANY, Inc., Defendant.**

**No. B–70–C–9.**

United States District Court,
E. D. Arkansas, N. D.

July 21, 1971.

---

John T. Lavey, of Walker, Kaplan, Lavey & Mays, Little Rock, Ark., for plaintiff.

Jeff Davis, Jr., of Teague, Bramhall, Davis & Plegge, Little Rock, Ark., for defendant.

Memorandum Opinion

HENLEY, Chief Judge.

This is a products liability case in which the plaintiff, an injured factory worker, recovered a jury verdict of $50,-000 against the defendant, the manufacturer of the machine which plaintiff was operating or about to operate when she received her injury. Federal diversity jurisdiction is established; the governing law is that of Arkansas, the State wherein the accident occurred. The cause is now before the Court on alternative post-trial motions filed by the defendant. Defendant seeks alternatively, entry of a judgment notwithstanding the verdict, a new trial, or a remittitur in an amount equal to the sums that plaintiff has received or will receive in the future under the provisions of the Arkansas Workmen's Compensation Act. Initiated Act No. 4 of 1948, as amended, Ark.Stats.Ann. § 81–1301 et seq.

The historical facts of the case are not seriously disputed. The accident occurred on the factory premises of plaintiff's employer, Al-Craft Products Company of Newport, Arkansas, a maker of aluminum products of various kinds including window frames for mobile homes. The task of the plaintiff was to operate a 25 ton punch press into which material to be punched was fed manually; the machine was activated by electric current, and, as used in the employer's particular operation, was controlled by a foot pedal that was placed underneath the machine. The operating cycle of the machine was ½₀th of a second.

The accident presently to be described occurred in 1969. Al-Craft had purchased the machine and its accessories, including the foot pedal, from the defendant manufacturer, Service Machine Company, Inc. The machine itself was designed and manufactured by the defendant; the defendant did not design the foot pedal but furnished it as a component part of the machine. The machine was not equipped with any screen or guarding devices designed and intend-

ed to prevent the hands or arms of operators from being accidentally inserted into the press while the machine was in operation. The machine was built so that it could be equipped with dual hand controls to provide an alternative means of activating the press, and had those controls been in a useable condition and had they been used by plaintiff, her injury probably would not have occurred.

Al-Craft had purchased a number of these machines from the defendant, and Al-Craft had done the installing of the machines. Al-Craft elected to have its employees, including plaintiff, operate the presses by the use of the foot pedals that came with the machines and did not activate the dual hand controls. Al-Craft employees stood in front of the presses while operating them. The floor of the Al-Craft factory was concrete; moisture was generated in the course of the manufacturing process and water tended to collect on the concrete floor underneath the presses. In order to keep their feet from getting wet employees customarily operated the machines while standing on wooden pallets placed on the floor, which pallets kept the feet of the operators about an inch above the floor. The foot pedals were customarily placed on the pallets in positions convenient to the operators. The pallets were not secured to the floor, and the pedals were not secured to the pallets.

As stated, the faces of the presses had no safety guards. On each press there was a warning sign immediately facing and easily read by an operator. The text of the sign was as follows:

"WARNING

"Never Place Hands Under Ram Or Within Die Area.

"Stop Motor And Block Ram When Changing Dies.

"Adequate Safety Guards Must Be Provided By The Owner Of This Press To Prevent The Operator's Hands From Entering Die Area."

At some time prior to the accident the Al-Craft premises and equipment had been inspected by representatives of the Arkansas State Department of Labor who had required that guards be placed on the presses; however, at the time of the accident there had been no compliance with that requirement.

At the time of the accident plaintiff was an experienced punch press operator and she was fully familiar with the particular machine involved in the case. She knew that the machine had no guard across the face of it to prevent her hands from getting into the die area; and it was obvious to her, as it would have been obvious to anyone of common sense, that if her hand and arm did get into that area while the press was in operation they would almost inevitably be mangled.

Plaintiff operated the press without incident throughout the morning of the day on which the accident occurred. Upon her return to the machine following her lunch period, she took her position on the pallet in front of the machine, and ran one piece of material through the machine to see that it was operating properly. At this point the pallet tilted for some reason, and the tilting caused plaintiff to lose her balance. As she sought to regain her balance, her right hand and arm slid into the die area and were crushed and mangled when the ram came crashing down upon them a fraction of a second later.

Her injuries necessitated the amputation of plaintiff's right arm a short distance below the elbow. That injury, of course, is a permanent one, and in her case it is a disabling one, particularly in view of the fact that she cannot make use of an artificial arm which has been provided for her. She has unquestionably endured a great deal of pain and mental anguish and will endure the same in the future, at least to some extent; she has lost earnings, and her ability to earn money now and in the future essentially has been destroyed.

Following her injury plaintiff received compensation as provided by the Arkansas statute. That compensation was plaintiff's sole remedy against Al-Craft,

but under the provisions of section 40 of the Act, Ark.Stats.Ann. § 81–1340, she had the right, which she exercised, to bring suit at common law against the manufacturer of the machine as a third party tort feasor.

Ultimately, it was the theory of the plaintiff that her injury was proximately caused by negligence on the part of the defendant in designing and manufacturing a dangerous machine without adequate safety devices and in failing to give adequate warnings about the danger of using the machine without such devices.

Throughout the case the defendant has contended consistently that it was not guilty of any negligence, that no act or omission on its part was a proximate cause of plaintiff's loss of her arm, that the failure of the employer to equip the machine with proper devices was an intervening cause of plaintiff's injury, that plaintiff was herself guilty of negligence that was equal to or greater than the alleged negligence of the defendant,[1] and that plaintiff voluntarily assumed the risk of the injury that she received.[2]

The Court takes up first defendant's alternative motion for a remittitur. That motion is based on defendant's contention that plaintiff's injury was due in large measure if not entirely to the alleged negligence or misconduct of Al-Craft in failing to provide plaintiff with a safe place to work and in assigning her to a machine that was not safe for operation. Omitting formal parts, the motion is as follows:

"Comes now the defendant and moves the court to enter a remittitur in the amount paid or due to be paid by workmen's compensation carrier of the employer, Al-Craft, Inc., on the grounds that this portion of the judgment should not inure to the benefit of the employer as a matter of law, for the reason that under the circumstances in this case a grossly negligent employer should not be rewarded at the expense of the defendant in this case, because such would violate the letter and intent of the workmen's compensation act and also would be against the public policy of the State of Arkansas."

That motion is without merit and seems to the Court to be an effort to revive indirectly the effort of the defendant to secure contribution or indemnity from plaintiff's employer. At an early stage of the proceedings defendant filed a third party complaint against Al-Craft which was dismissed without published opinion on motion of that corporation. There was no contract of indemnity between defendant and Al-Craft, and, as has been seen, plaintiff had no cause of action against her employer in view of her workmen's compensation coverage. In those circumstances the Court held that defendant was not entitled under Arkansas law to either indemnity or contribution. Cf. C. & L. Rural Electric Cooperative Corporaion v. Kincaid, 221

1. Under Arkansas law contributory negligence on the part of an injured person is a complete defense to his claim if his own negligence was equal to or greater than the negligence of the defendant proximately contributing to the injury. If the injury is proximately caused by the concurring negligence of both the injured party and the defendant, and if the negligence of the injured party is of less degree than the negligence of the defendant proximately contributing to the injury, then the injured party can recover notwithstanding his own negligence, but in such event it is the duty of the jury to diminish his award in proportion to his own negligence. Ark.Stats. Ann. §§ 27–1730.1 and 27–1730.2.

2. The Arkansas comparative negligence statute cited in the preceding footnote, unlike the Federal Employers' Liability Act, 45 U.S.C.A. § 54, did not abolish the common law defense of assumption of risk, and it is now established in Arkansas that in most tort situations assumption of risk, if established, is a complete defense to an injured person's claim for damages. Spradlin v. Klump, 244 Ark. 841, 427 S.W.2d 542; J. Paul Smith Co. v. Tipton, 237 Ark. 486, 374 S.W.2d 176; Bugh v. Webb, 231 Ark. 27, 328 S.W.2d 379.

Ark. 450, 455–458, 256 S.W.2d 337; Fidelity & Casualty Co. of New York v. J. A. Jones Construction Co., 8 Cir., 325 F.2d 605, 612. In its memorandum opinion filed on June 1, 1970, the Court stated, among other things, that if the defendant is liable to the plaintiff, its liability is not diminished by the fact that the employer may have been negligent also.

■ The Court finds no basis whatever in the Arkansas Workmen's Compensation Act for the entry of a remittitur in this case based on what plaintiff has received or may receive in the future by way of workmen's compensation payments. Nor does the Court see how full recovery by plaintiff will in any way be of any benefit to Al-Craft.

Under Ark.Stats.Ann. § 81–1340(a), the receipt of plaintiff of workmen's compensation does not affect her right to recover full compensation from the defendant, assuming that she is entitled to recover. Under section 81–1340(b) Al-Craft's workmen's compensation insurance carrier is entitled to subrogation and is entitled to have its subrogation claim satisfied in whole or in part out of plaintiff's award, but such satisfaction will benefit the compensation carrier, not Al-Craft.

It appears to the Court that defendant's real quarrel is with the Arkansas compensation statute which does not provide for non-contractual indemnity or contribution in a case in which an employer and a third party are both to blame for an injury suffered by an employee covered by workmen's compensation. If that be a defect in the Arkansas statute, it is one that must be remedied by the Arkansas Legislature, and not by this Court.

The alternative motion for a new trial does not call for extended discussion. As far as the trial of the case is concerned, the Court is not aware of any errors that would call for a new trial. The verdict returned by the jury is certainly not excessive in the sense of being incommensurate with plaintiff's injuries and damages. And the Court is persuaded that the issues in the case were submitted to the jury under appropriate instructions assuming that plaintiff was entitled to go to the jury at all.[3]

That brings us to the crucial question of whether or not the plaintiff made a submissible case. The question is a serious one and it has several aspects. Up to a point at least, the governing principles of law are clear.

■ It is axiomatic that a trial court in passing upon a motion for judgment notwithstanding the verdict of a jury in favor of a plaintiff is required to view the case in the light most favorable to the plaintiff and must keep in mind the rule that questions like negligence, contributory negligence, proximate cause, and assumption of risk are ordinarily for resolution by the jury, and the findings of the jury are not to be set aside if sup-

3. In his brief in support for a motion for a new trial counsel complains that in the course of its deliberations the jury propounded a written question to the Court and that the jury was held to its deliberations for an unreasonable length of time. The question, which was shown to counsel on both sides, called for a simple and categorical "Yes" or "No" answer; the correct answer was obviously "No," and that answer was sent to the jury with the knowledge of counsel on both sides and without objection from either side. It is true that the jury experienced considerable difficulty in arriving at a verdict; the Court kept it together until after midnight and then advised that if a verdict was not reached shortly, the jury would be permitted to retire but would be called upon to resume its deliberations the next morning or more properly later on the same morning. A verdict was returned a short time later. At no time did counsel for the defendant ask the Court to discharge the jury, and he made no objection to the Court's statements to the jury. In any event the matter was one that addressed itself to the discretion of the Court; the trial had consumed a considerable amount of time; the case was an important one to both sides and one that needed to be decided. In such circumstances the Court does not consider that it abused its discretion in not discharging the jury before it reached a verdict.

ported by substantial evidence. As stated by Chief Judge Matthes in Ford Motor Co. v. Zahn, 8 Cir., 265 F.2d 729, 730:

> "Since defendant's contention is that, under all the facts and circumstances of record, no submissible case was made, it is well to bear in mind the general rules governing any plea to displace a jury verdict: (1) All disputed fact questions and permissible inferences must be viewed in the light most favorable to plaintiff; (2) The question of negligence is usually for jury determination and it is only in rare situations, where there is no occasion for reasonable men to differ, that the question becomes one of law for the court; and (3) It is only where all or substantially all of the evidence is on one side, that a directed verdict should be entered. See Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859, 860, 861, and cases cited."

 In Arkansas, as elsewhere, negligence is the doing of something that a person of ordinary prudence would not have done in the same or similar circumstances or a failure to do something that a person of ordinary prudence would have done in the same or similar circumstances. In order to constitute the basis of a tort action a negligent act or omission must be a proximate cause of injury or damage. If the negligence is but a remote cause of an injury or damage, it is not actionable. St. Louis, I. M. & S. R. Co. v. Commercial Union Insurance Co., 139 U.S. 223, 11 S.Ct. 554, 35 L.Ed. 154; James v. James, 58 Ark. 157, 23 S.W. 1099; Martin v. St. Louis, I. M. & S. R. Co., 55 Ark. 510, 19 S.W. 314.

 Concepts of negligence and proximate cause presuppose a duty on the part of one person to exercise care to avoid injury to someone else or to himself. Generally, the duty to use care arises when it is reasonably foreseeable that injury will probably result to one's self or to another if care is not used.

That duty does not depend upon privity of contract but upon the foreseeability of injury or damage. North Little Rock Transportation Co. v. Finkbeiner, 243 Ark. 596, 420 S.W.2d 874; Hartsock v. Forsgren, Inc., 236 Ark. 167, 365 S.W.2d 117; Collier v. Citizens Coach Co., 231 Ark. 489, 330 S.W.2d 74; Hill v. Wilson, 216 Ark. 179, 224 S.W.2d 797; Chapman Chemical Co. v. Taylor, for Use and Benefit of Wilson, 215 Ark. 630, 222 S.W.2d 820.

Earlier Arkansas cases dealing with the problem of foreseeability generally considered it in relation to "proximate cause" rather than in relation to "negligence." More recent Arkansas cases have taken the opposite approach. See e. g., Hill v. Wilson, Collier v. Citizens Coach Co., and Hartsock v. Forsgren, Inc., all supra. And, that approach has been taken by the able tort lawyers who drafted the Arkansas Model Jury Instructions, Civil. See AMI Nos. 301, 501–503. It appears to the Court, however, that the question of whether "foreseeability" relates to negligence or whether it relates to proximate cause is perhaps largely one of semantics and may not be of much real practical importance. In this connection the language of the Arkansas Supreme Court in Hartsock v. Forsgren, Inc., supra, 236 Ark. at 169, 365 S.W.2d at 118, is instructive:

> "The circuit court was right in sustaining the demurrer, for the facts do not show that the child's injuries were proximately caused by negligence on the part of defendant. We reach this conclusion whether we devote our attention primarily to the question of negligence or to that of proximate cause. The two things, as we observed in Hill v. Wilson * * * shade into each other. We need not now attempt to draw fine lines of distinction.

> "To be negligent a person must be in a position to realize that his conduct involves a hazard to others. In the *Hill* case we described a negligent act as 'one from which an ordinary prudent person in the actor's position—in the same or similar circumstances—

would foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner'. * * * "

■ Where the chain of causation between a negligent act and an ultimate injury is broken by an independent, intervening cause, including human conduct, the original negligence ceases to be a proximate cause of the injury and is considered as being merely a remote cause. It is settled law in Arkansas, however, that where the occurrence of the intervening cause is foreseeable to the original actor or where his conduct substantially increases the likelihood of the occurrence of the intervening cause, the original conduct, if negligent, is still considered to be a "proximate cause" of the injury, and the original actor remains liable for the ultimate consequences of his negligence. Hartsock v. Forsgren, Inc., supra; Hill v. Wilson, supra; Southwestern Bell Telephone Co. v. Adams, 199 Ark. 254, 133 S.W.2d 867; Walton v. Sherwin-Williams Co., 8 Cir., 191 F.2d 277; Lowden v. Shoffner Mercantile Co., 8 Cir., 109 F.2d 956; Kisor v. Tulsa Rendering Co., W.D.Ark., 113 F.Supp. 10. Speaking of the question of "foreseeability" in the situation in which human acts intervene between original conduct and ultimate injury, the Court in *Hartsock*, supra, 236 Ark. at 169, 365 S.W.2d at 118, said:

" * * * Moreover, when the voluntary acts of human beings intervene between the defendant's act and the plaintiff's injury, the problem of foreseeability is still the same: Was the third person's conduct sufficiently foreseeable to have the effect of making the defendant's act a negligent one? Harper & James, The Law of Torts, § 20.5; Rest., Torts, § 447."

■ In an earlier portion of this opinion it was noted [4] that while contributory negligence is no longer a complete defense in Arkansas unless it is equal to or greater than the negligence of the defendant proximately contributing to plaintiff's injury, assumption of risk still remains viable as a complete defense in most tort situations. However, in Spradlin v. Klump, 244 Ark. 841, 427 S.W.2d 542, the Court recognized that the doctrine of assumption of risk is a harsh one and not favored by the courts. 244 Ark. at 842, 427 S.W.2d 542. In order to establish the defense of assumption of risk in Arkansas three things must appear: (1) That a dangerous condition existed that was inconsistent with the safety of the plaintiff. (2) That the plaintiff was actually aware of the condition and appreciated the danger. (3) That the plaintiff with such awareness and appreciation of the risk voluntarily exposed himself to the danger which produced his injury. J. Paul Smith Co. v. Tipton, 237 Ark. 486, 374 S.W.2d 176.

The rule that a manufacturer of a chattel may be liable in tort for an injury to a third person with whom the manufacturer had no contractual relations where the injury results from the inherently dangerous nature of the chattel or from some defect in it was probably first recognized in Arkansas in Chapman Chemical Co. v. Taylor, supra, in which case the Arkansas Court specifically adopted the rule of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, to the effect that tort liability should be predicated upon foreseeability of injury rather than on privity of contract.

In the later case of International Harvester Co. v. Land, 234 Ark. 682, 354 S.W.2d 13, the Court stated (p. 687 of 234 Ark., 354 S.W.2d 13) that the " 'products liability' " doctrine is "now common in our courts." The Court then went on to quote approvingly from 2 Harper & James, The Law of Torts, p. 1541, as follows (p. 688 of 234 Ark., p. 18 of 354 S.W.2d):

" 'The maker of an article for sale or use by others must use reasonable care and skill in designing it and providing specifications for it so that it is

---

4. Footnotes 1 and 2, supra.

reasonably safe for the purposes for which it is intended, and for other uses which are foreseeably probably (sic). And a person who undertakes such manufacturing will be held to the skill of expert in that business and to an expert's knowledge of the arts, materials, and processes. Thus he must keep reasonably abreast of scientific knowledge and discoveries touching his product and of techniques and devices used by practical men in his trade. He may also be required to make tests to determine the propensities and dangers of his product.' "

Still quoting from Harper & James, op. cit. at p. 1564, the Court went on to say (p. 688 of 234 Ark., p. 18 of 354 S.W. 2d):

" 'Where design or specifications are involved it usually appears or is admitted that the condition which proved injurious was created intentionally. If, then, the condition is also shown to be unreasonably dangerous, an inference of negligence is usually warranted.' "

And the Court also referred to Prosser, The Law of Torts, 2d ed., p. 497, where it is said:

" 'It is now generally agreed that a seller, or other supplier of chattels for a consideration, may be liable for harm to the person or property of a third person who may be expected to be in the vicinity of the chattel's probable use, if he has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied.' " (234 Ark. at 688–689, 354 S.W.2d at 18.)

Nicklaus v. Hughes Tool Co., 8 Cir., 417 F.2d 983, was a products liability case that arose and was tried in Arkansas. In the course of its opinion the Court of Appeals pointed out that the duty of care owed by a manufacturer of a machine extends to component parts incorporated into the machine even though such parts are manufactured by another.

A manufacturer's duty of care extends into the area of warnings. Where there is a latent defect or danger known to the manufacturer to exist or which could have been discovered by the exercise of ordinary care, the manufacturer may be found guilty of negligence if he fails to warn of the defect or danger. However, he is not required to give warnings with respect to obvious dangers or those that it is reasonably supposable that a user of the machine will discover for himself before coming to harm. Vanoven v. Hardin, 233 Ark. 301, 344 S.W.2d 340, and cases there cited.

The liability issues submitted to the jury were negligence on the part of the defendant, contributory negligence on the part of the plaintiff, and assumption of risk. No particular objections were made on behalf of defendant to the form of the instructions given on those issues which were conventional and which conformed in general to relevant sections of the Arkansas Model Jury Instructions which have been mentioned.

The question of "contributory negligence," as such, and without regard to its relationship to "assumption of risk," gives the Court no trouble. Assuming for the moment that the defendant was guilty of causal negligence and that plaintiff did not "assume the risk" of injury, the Court thinks that the question of whether plaintiff used ordinary care for her own safety in undertaking to operate the press in the absence of a guard, and while standing on a pallet, and by the use of an unsecured foot pedal, and the question of whether negligence on her part caused the pallet to tilt and the machine to be activated while her hand and arm were dangerously close to the die area of the press, and the question of whether plaintiff used ordinary care in trying to regain her balance when the pallet tilted, were clearly for the jury. It was also the function of the jury to determine how the negligence, if any, of the plaintiff compared

with the negligence, if any, of the defendant.[5]

Taking up next the question of negligence and considering it apart from the question of proximate cause, the Court will say, first, that there is no question whatever that the machine involved in this case with its lack of a guard or similar device was a highly dangerous machine. And it is obvious that the defendant itself recognized that fact by the warning sign which it attached to the machine prior to its delivery to Al-Craft. The danger incident to the use of the machine without a protective device was enhanced, of course, by the fact that the available hand controls or "palm controls" had not been activated by Al-Craft and were unuseable and that an operator had to use a foot pedal that might accidentally be pressed, and by the fact that the foot pedal was not secured in a fixed position, as well as by the fact that the operator stood on a rather insecure pallet. But, even without those aggravating factors the absence of the guard across the front of the machine rendered its use highly dangerous. Looking at the matter another way, if the press had been equipped with a guard, the factors that have been mentioned as aggravating the danger would have been insignificant.

When the defendant sold this machine to Al-Craft, defendant knew, of course, that the machine would be used by Al-Craft employees although the defendant probably did not know what the details of the installation of the machine and the conditions of its use would be. Certainly, the defendant as a manufacturer owed some duty of care to Al-Craft employees, including plaintiff, to protect them from having their hands and arms crushed as a result of being placed accidentally in the die area under the ram of the press while the machine was running or when it was capable of being instantaneously activated by an accidental pressing of the foot pedal which had been furnished by the defendant as an optional means of operating the press.

The obvious means of protecting an operator of the press from such injury was to equip the machine with a guard or screen; and the real question in the case as far as the negligence issue is concerned is whether a manufacturer of ordinary prudence in the exercise of ordinary care would have itself equipped the machine with a guard or whether it would have delegated that task to the industrial purchaser of the machine as the defendant manifestly undertook to do in connection with this machine. The warning sign placed on the machine demonstrates that the press should have had a guard and was designed to be equipped with one; the defendant simply left it up to the buyer either to install or not install the device.

The testimony on behalf of plaintiff which was essentially undisputed is that the machine needed a protective device; that such a device was proper and feasible, and that it would not have been unduly burdensome or expensive to the defendant to have installed a guard or screen and to have passed the cost of it on to Al-Craft as part of the overall cost of the machine.

It is at this point of the inquiry that the matter of "foreseeability" that the Court has discussed in some detail becomes of controlling importance whether it be regarded in relation to negligence or in relation to proximate cause or in relation to both.

While the defendant may have thought that Al-Craft would have taken adequate precautions to protect its employees, or that it would be required to do so by its workmen's compensation insurance carrier or by regulatory agencies of the State of Arkansas, the Court does not think that as a matter of law defendant had a right to assume that protective devices would be provided.

5. The jury was not required to make any special finding on the question of comparative negligence. But the size of the verdict that was finally returned at least suggests that the jury did not find that plaintiff was guilty of any contributory negligence.

The Court thinks that a jury might well find on the evidence presented in this case that a press manufacturer of ordinary prudence would have foreseen that its purchaser would not provide a guard for the press, particularly in view of the fact that there is evidence that the installation of such a device would cut down to some extent production of parts by means of the machine, and that a jury might also find that it was reasonably foreseeable that a purchaser of the press would be guilty of other acts or omissions in relation to the machine which would be dangerous to an operator.

On this phase of the case the Court concludes ultimately that it was for the jury to say whether a manufacturer of ordinary prudence would have equipped the machine with a guard and whether the defendant was negligent in not doing so.

The Court thinks also that the jury would have been justified in finding that the defendant was negligent to some extent with respect to warnings about the use of the machine. While the Court believes that the question of the adequacy of the warnings given by the defendant is really of minor importance, it does call for some brief comment.

Plaintiff and other operators similarly situated were obviously warned adequately by the signs on the presses that they should keep their hands out of the die areas; as a matter of fact, they did not need any warning at all in that connection. But, the jury might have found that a press operator of ordinary prudence, even an experienced one, might not have realized that the danger incident to the use of the press without a guard or screen would be aggravated if the foot pedal rather than the hand controls were used to activate the machine, particularly if the footing of the opera-

tor was insecure and if the pedal was not fastened in one place, and that a manufacturer of ordinary prudence would have given some particular warnings about the enhanced dangers of operation in such circumstances or under such conditions, which was not done in this case.

On the issue of proximate cause the contention of the defendant is that plaintiff's injury was due in part to her own alleged negligence and in remainder to the alleged "misuse" of the press by Al-Craft; and it is contended that Al-Craft's alleged failure to discharge its own obligations to its employees was an intervening cause which would serve to insulate the defendant from any liability to the plaintiff.

As already stated, it was for the jury to say whether and to what extent plaintiff's injury was due to her own negligence. As far as the claim of intervening cause is concerned, it is sufficient to say again that the conduct of Al-Craft in relation to the machine was foreseeable or the jury might have found that it was so that Al-Craft's conduct was not sufficient to break the chain of causation between the negligence of the defendant and the injury of the plaintiff. Hartsock v. Forsgren, Inc., supra. In other words, the jury might have found that plaintiff's injury was proximately caused by the joint and concurrent negligence of both the defendant and Al-Craft.[6]

On the issue of proximate cause defendant has cited the Court to the very recent decision of the Supreme Court of Arkansas in Cowart v. Casey Jones, Contractor, Inc., 250 Ark. 881, 467 S.W.2d 710. That case, which has been discussed by counsel on both sides, had not been decided when this case was tried in May of the current year. In *Cowart* the plaintiff, an employee of Bechtel Corporation, received fatal injuries as a result

---

6. At one stage of the jury's deliberations the Court found it desirable to instruct the jury specifically that it was not concerned with any question of the fault or negligence of Al-Craft, except to the extent that such fault or negligence, if any, might bear on the question of whether the defendant was guilty of negligence that was a proximate cause of plaintiff's injury. No objection to that instruction was made.

of being struck by a component part of a crane that Bechtel had leased from Casey Jones, Contractor, Inc. The accident was due to the fact that the crane lacked certain safety devices, a fact known to the deceased's employer which did not remedy the defect. The administratrix of the estate of the deceased employee brought a third party suit in the Circuit Court of Pulaski County, Arkansas, against the supplier of the crane. There was evidence to the effect that it was the custom in the trade for lessees of cranes lacking the safety devices in question to supply the defects by an available means described in the opinion of the Arkansas Supreme Court. At the conclusion of plaintiff's case the Circuit Court directed a verdict for the defendant "on the basis that the continued use of the crane by Bechtel * * * with the knowledge that it lacked certain safety devices, constituted a separate and intervening cause." (250 Ark. at 882, 467 S.W.2d at 711.)

The Cowart opinion, which certainly lends force to defendant's argument that the conduct of Al-Craft was an efficient, intervening cause of plaintiff's injuries, is a troublesome one. The difficulty arises from the fact that the Court does not discuss the question of foreseeability at all although it cites with approval Hartsock v. Forsgren, Inc. and Collier v. Citizens Coach Co., both supra. There is nothing in the opinion to indicate that the Arkansas Court intended to make any new law or to change existing case law or that it thought that it was doing so. It appears to this Court that the Arkansas Court evidently thought that the failure of Bechtel to remedy the deficiency in the leased crane was not foreseeable, and a basis for that view can be found in the evidence relative to trade or industry practice or custom.

This Court has undertaken to give due weight to Cowart, but is still persuaded that in this case it was for the jury to say whether the nonfeasance or misfeasance of Al-Craft constituted an intervening cause that would absolve defendant of the consequences of its own initial negligence.

There remains for consideration the question of assumption of risk, and that question is not without difficulty. It must be recognized that the very capacity of this machine to cause crippling or even fatal injury to an operator using the machine in the absence of a guard or screen created what may be referred to as an inherent risk of injury which was inescapable. However, that risk might be either enhanced or diminished depending upon the care employed by the operator to avoid injury and the methods and conditions of operation.

If under the Arkansas law of torts plaintiff assumed the risk of injury that was inherent and inescapable as long as the machine was not equipped with a guard or screen, she was not entitled to go to the jury. That is true because she admittedly knew that danger inhered in any use of the machine without a protective device; she admittedly knew that there was no such device on the machines; and she voluntarily exposed herself to that inherent risk in the sense that she accepted her employment and did not quit her job.

Whether as a matter of Arkansas law the plaintiff assumed that risk is a question to which the Court will return presently. Suffice it for the present to say that at the conclusion of the testimony the Court answered that question, at least in its own mind, in the negative, and did not submit to the jury any question of whether plaintiff assumed the inherent risk that has been described.

The Court thought, however, that the jury might find that the operation of the machine by means of the foot pedal and while the operator was standing on a pallet enhanced the inherent risk, and that the jury might find that plaintiff had assumed the enhanced risk. And the issue of assumption of risk was submitted on that theory.

The jury was instructed in standard Arkansas terms that the defense of as-

sumption of risk is available in Arkansas, and the elements of that defense were defined. The Court then proceeded as follows:

"If you find from a preponderance of the evidence that the operation of the machine in the manner and in the circumstances described in the evidence exposed the operator to danger resulting from a slipping or tilting of the pallet described in the evidence; and if you further find from a preponderance of the evidence that the plaintiff as an individual understood that danger, if any, and appreciated the peril, if any; and if you still further find from a preponderance of the evidence that with such knowledge and appreciation, if any, of that peril, if any, she voluntarily exposed herself to that danger or risk, if any, and that her injury was proximately caused by that danger or risk, then she cannot recover in this action, and your verdict must be for the defendant.

"Before leaving the subject of assumption of risk let the Court make it clear to you just what risk it is talking about. It is obvious to anyone that the punch press machine involved in this case was a dangerous machine in the general sense that it could or would cause serious injury to any operator who might be so unfortunate as to get his hand or arm caught under the press while the machine was in operation and that the risk of such injury must have been obvious to anybody using the machine. But, that general risk and that general danger are not what I am talking about.

"What I am talking about is the alleged particular risk and danger said to have been involved in operating the machine in the particular manner in which plaintiff was operating this machine, that is to say, while standing on a wooden pallet with the unsecured foot pedal being also on the pallet and with the alleged danger being that the pallet would slip or tilt and that the operator might as a result accidentally activate the foot pedal while at the same time getting her arm or hand under the press.

"And before you would be justified in finding for the defendant on the basis of assumption of risk you must find that this alleged particular danger existed, and that the plaintiff in fact knew that it existed and appreciated the risk that it entailed, and that with such knowledge and appreciation, if any, she voluntarily exposed herself to that particular danger and risk of injury. Unless you find all of those things from a preponderance of the evidence, the defendant has failed to establish the defense of assumption of risk."

The Court is of the opinion that the jury was justified in finding as it did find that the plaintiff did not understand and appreciate and hence did not assume the enhanced risk that has been described. And, if the Court was correct in its limitation of the submission of the assumption of risk issue to that enhanced risk, then defendant is not entitled to prevail on its assumption of risk theory. It is now necessary to return to the question of whether plaintiff assumed the "inherent" and unavoidable risk heretofore mentioned.

Arkansas adopted its first workmen's compensation statute in 1939, Act 319 of 1939. Prior to the enactment of that statute an injured employee had a common law cause of action against his employer for injuries proximately caused by the failure of the employer to provide him with a safe place to work or safe tools or appliances with which to work. An employee claim in such an action, however, was subject to certain absolute common law defenses available to the employer, including assumption of risk and, at that time, contributory negligence. But due to the concept of privity of contract an injured employee had no claim against the manufacturer of a defective or unsafe tool or machine. That concept was not abandoned in Arkansas until 1949 when Chapman Chemical Co. v. Taylor, supra, was decided, and by that time workmen's compensation had

been in force in Arkansas for some ten years.

Section 4 of the present Arkansas Workmen's Compensation Act, Ark. Stats.Ann. § 81–1304, provides that if an employer who is required to provide compensation for his employees fails to do so voluntarily an injured employee may elect either to proceed administratively under the statute for statutory compensation or to sue at law for damages. And that section provides further that if the injured employee elects to sue at law, the employer will not be permitted to rely on claims of negligence on the part of a fellow employee, or assumption of risk, or contributory negligence. Thus, had Al-Craft not provided workmen's compensation coverage for plaintiff, and had she sued Al-Craft, the issues of contributory negligence and assumption of risk would not have been in the case.

The defendant here, however, was not plaintiff's employer, and the Court sees nothing in the Act that would deprive a third party tort feasor, like defendant, of any of its common law defenses. And the Court concludes that the manufacturer of a machine sued in a products liability case by an injured employee of the owner of the machine has available to it the defense of assumption of risk to the same extent that it is available to any other tort defendant in Arkansas.

It is to be conceded to the defendant that prior to Arkansas' adoption of workmen's compensation as a method of compensating the victims of injuries received in the course of their employment, there were a number of decisions of the Arkansas Supreme Court that would support the view that plaintiff assumed the inherent risk of being injured while working at or near an unprotected machine provided that the evidence established the existence of the essential elements of the defense of assumption of risk. See: Ward Furniture Manufacturing Co. v. Weigand, 173 Ark. 762, 293 S.W. 1002; Jones & Dunn v. Mayberry, 143 Ark. 390, 220 S.W. 479; Pekin Stave & Manufacturing Co. v. Ramey, 108 Ark. 483, 158 S.W. 156; and Fullerton v. Henry Wrape Co., 105 Ark. 434, 151 S.W. 1005. Those are old cases, however, and were decided during a period when the legal climate of Arkansas was far less hospitable to the claims of the victims of industrial accidents than it is today. And the real question is whether the rule laid down in those cases would be applied by the Supreme Court of Arkansas to the plaintiff in 1971. · As has been seen, those cases would no longer even be relevant had plaintiff had occasion to sue her employer under section 4 of the Workmen's Compensation Act.

Since the vast majority of employee injuries in Arkansas affect employees who are covered by the Act, and since practically all employers covered by the Act comply with its terms and provide coverage for their workers, personal injury suits by employees against their employers have been very rare in Arkansas in recent years. There have been a few cases involving suits brought by employees not covered by the Act, and in some of them the doctrine of assumption of risk has been recognized as being available to the employer as a complete defense. See: Smith v. Snider, 247 Ark. 342, 445 S.W.2d 502; Spradlin v. Klump, supra; Richardson v. Huitt, 238 Ark. 288, 379 S.W.2d 265; Pinchback Planting Co. v. Cloud, 228 Ark. 31, 305 S.W.2d 552; and Walther v. Colley, 224 Ark. 1027, 279 S.W.2d 288. None of those cases, however, involved a factory worker injured by a dangerous and unprotected machine at which the worker had been assigned to work by his employer.

As has been seen, the Arkansas Supreme Court recognizes that the doctrine of assumption of risk, in the sense that the term is being used in this opinion, is a harsh one, and it does not enjoy judicial favor in Arkansas. It has been criticized sharply as being inhumane, anachronistic, and unnecessary. Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (see

both the majority opinion of Mr. Justice Black and the concurring opinion of Justice Frankfurter); Harper & James, op. cit., Chapter XXI, particularly sections 21.1, 21.4, and 21.8; Prosser on Torts, 2d ed., Hornbook Series, § 55, pp. 303 et seq. The "voluntariness" with which a worker assigned to a dangerous machine in a factory "assumes the risk of injury" from the machine is illusory.

"As one judge succinctly put it, it was 'his poverty, not his will' which consented. Another pointed out that 'freedom of choice predicates, not only full knowledge of the circumstances on which the exercise of choice is conditioned, so that he may be able to choose wisely, but the absence from his mind of any feeling of constraint so that nothing shall interfere with the freedom of his will.'" Harper & James, op. cit., § 21.4, pp. 1176–1177.

In the highly unlikely event of a repeal of the Workmen's Compensation Act in Arkansas with a consequent relegation of injured employees to their common law causes of action against their employers, this Court does not believe that the Supreme Court of Arkansas would return to the rule announced in the pre-1939 decisions dealing with employees exposed to dangerous machinery. Nor does the Court believe that that rule would be applied today in a products liability case brought by an injured employee, like plaintiff, maintaining a third party suit against a negligent manufacturer as authorized by section 40 of the Workmen's Compensation Act. In any event, for purposes of this case the Court will predict that the Arkansas Supreme Court would not on the present record apply the old rule to this plaintiff's cause of action; and the Court adheres to the view which it took in submitting the case to the jury.

In view of what has been said, all of the motions of the defendant that have been discussed will be overruled. An appropriate order is being entered.